The Evansville and Terre Haute Railroad Company v. Mosier.

No. 13,236.

THE EVANSVILLE AND TERRE HAUTE RAILROAD COM-
PANY v. MOSIER.

RAILROAD.—*Fence.*—*Private Crossing and Gates.*—*Liability for Injury to Animals.*—A railroad company, which has constructed a private crossing and erected gates for the convenience of a land-owner, is not liable to the latter for animals which escape through the gates by reason of defective fastenings and are injured upon its track, unless it has contracted to keep the gates closed and in proper repair.

SAME.—*Duty to Keep Private Gates Closed.*—It can not be implied from the fact that a railroad company constructed a crossing and gates, which are used exclusively by a land-owner, that the former came under an obligation to keep the gates closed.

SUPREME COURT.— *Cross-Error.*— *Practice.*— Where no cross-error is assigned, an objection by appellee that evidence of a special defence was erroneously admitted by the trial court, under a general denial, is not available.

From the Knox Circuit Court.

*A. Iglehart, J. E. Iglehart* and *E. Taylor*, for appellant.
*T. R. Cobb* and *O. H. Cobb*, for appellee.

MITCHELL, C. J.—Mosier recovered a judgment against the appellant railroad company for the value of two colts killed by the company's cars on its track, upon which the animals entered, on the morning of the 22d of August, 1883.

The evidence shows without dispute that the animals escaped from the enclosure in which they were pasturing, through a gate at a private crossing which led from a public highway, over the company's right of way and track, to some enclosed pasture lands. The enclosure embraced a tract of land comprising one hundred and thirty-five acres, which, although owned in separate parcels by the plaintiff and four others, was surrounded by a common fence, and was used as a common pasture by the several owners. There were two private crossings leading over the company's right of way to the pasture, one at the north and the other at the south end

of the tract. The plaintiff habitually used the south gate, but on the occasion in question his animals passed out through the north gate onto the railway track. The company erected and maintained the gates at the crossings, and when the gates were closed and properly fastened the road was securely fenced. The fastening on the north gate had become so far defective that, unless adjusted with care by persons passing through the gate, it was liable to be blown open, or it might be opened by animals coming in contact with it. This was known to at least one of the land-owners, but it does not appear to have been known to the company or its agents, the crossings having been used, so far as appears, exclusively by the owners of the pasture land.

There was no evidence tending to show the agreement under which the gates had been erected, nor did it appear that the company had agreed with the land-owners to keep the gates shut or maintain them in repair. The section foreman, whose duty it was to pass over and keep that portion of the track and the adjacent fences in repair, observed the condition of the gates the evening before the animals were injured. He saw that the north gate was slightly "sagged," as it had been for some time before, but it was then closed, and apparently in a safe condition.

Relevant to the evidence, as thus summarized, the court charged the jury, substantially, that if they found from the evidence that the gate through which the animals escaped was kept up as a part of the fence, for the convenience and benefit of the several land-owners, or some of them, in using a private crossing over the railroad from the pasture to the public highway; and if they should further find that, with reasonable care in securing the fastening of the gate when shutting it, the gate was sufficient to prevent the escape of stock, and was usually kept closed, then their verdict should be for the defendant.

In this instruction the court presented to the jury the theory or conditions upon which they might exonerate the

defendant from liability. They were instructed, in effect, that, although the gate may have been erected for the convenience and benefit of the land-owners, yet, under the law, the exoneration of the railroad company depended upon whether or not it had provided the gate with such fastenings as could with reasonable care be adjusted so as to make it secure, or whether or not the company usually kept the gate closed. The charge was capable of no other construction, and must have been so understood by the jury. This statement of the law was inaccurate, and it must have misled the jury to the injury of the appellant.

Upon the former appeal of this case (*Evansville, etc., R. R. Co.* v. *Mosier*, 101 Ind. 597), the rule governing cases of this class was stated explicitly, to the effect that "The duty to fence is not owing to one who has undertaken to maintain the fence, nor to one for whose benefit the private crossing is maintained."

Persons for whose convenience railroad companies erect or maintain gates at private crossings assume the risk of all increased danger to their property which may result from having gates instead of fences. *Wabash R. W. Co.* v. *Williamson*, 104 Ind. 154; *Bond* v. *Evansville, etc., R. R. Co.*, 100 Ind. 301.

The land-owner for whose benefit a private crossing is maintained, and who is supposed to be fully cognizant of the condition of the gate, and of the uses to which it is put, must, therefore, as between himself and the company, see to it that the gate is in proper condition, and that it is kept closed. He has no right to expect that the railroad company, unless it has expressly contracted to do so, will erect gates for his exclusive benefit, and also keep watch over them and keep them closed. *Louisville, etc., R. W. Co.* v. *Goodbar*, 102 Ind. 596; *Fort Wayne, etc., R. R. Co.* v. *Woodward*, 112 Ind. 118.

In respect to the appellant's insistence that the evidence

does not sustain the verdict, it is sufficient to say it has not been pointed out to us, nor are we able to discover, wherein the evidence is in any manner substantially different from what it was when the case was appealed before. We were constrained to reverse the judgment then for want of sufficient evidence. We should necessarily arrive at the same conclusion again, were we not compelled to reverse for the error in giving the instruction above mentioned.

It is contended that because the railroad company erected the gates and constructed the crossings some fifteen years ago, it impliedly came under a contract to maintain the gates in repair and closed, as if they had not been erected for the appellee's convenience. We do not assent to this view. The evidence shows nothing more than that the crossings and gates were constructed by the railroad company, and that they were used exclusively by the owners of the land. It can not be implied that the railroad company came under an obligation to keep the gates closed.

The only answer filed by the railroad company in the court below was the general denial. The appellee now contends, that the defence that the animals entered upon the railroad track through a gate at a private crossing was a special defence, and that the evidence in relation to that matter was not admissible under the general denial.

We are asked to determine whether, under the issues, the evidence was properly admitted. It is sufficient to say in respect to this matter, that, although the appellee objected to the evidence, it was admitted, and, there being no cross-error assigned, no question in relation thereto is presented by the record.

The judgment is reversed, with costs, with directions to the court below to sustain the appellant's motion for a new trial.

Filed May 11, 1888.