No. 709.

## THE TOLEDO, ST. LOUIS AND KANSAS CITY RAILROAD COMPANY *v.* BURGAN.

RAILROAD.—*Private Crossing.—Written Agreement to Make, Construction of.—Cattle Guards.—Wing Fences.—Gates.*—Where a railroad company has agreed, in writing, in consideration of the grant of the right of way, to construct a crossing; and did, in pursuance of the agreement, construct a farm crossing, of which cattle guards and wing fences were an essential part, the company is not in a position to claim that the mere construction of such crossing was a full and final compliance with the terms of the contract, and that having so complied therewith, the company has the right, after maintaining the same for many years, to remove the cattle guards and wing fences without the consent of the land owner, and to erect in lieu thereof gates in the right of way fences, and thenceforth, without notice to the land owner, to rely on him or his tenant to maintain and keep the gates in repair.

SAME.—*Private Crossing.—Damages.—Defense.*—In an action for damages for failure of a railroad company to properly maintain a private crossing according to contract, it is no answer to say that the plaintiff might have performed the duty incumbent on the company, and thus have prevented or lessened the damages.

SAME.—*Private Crossing.—Duty of Land Owner to Maintain.*—Where a private railroad crossing is constructed under and pursuant to the terms of a contract, with wing fences and cattle guards, there is no duty devolving on the land owner, by statute, to maintain it.

CONTRACT.—*Construction by Parties Thereto.*—If parties, by their acts, have given a construction to a contract entered into by them, the courts will adopt and enforce that construction.

From the Howard Circuit Court.

*S. C. Bayless* and *C. G. Guenther*, for appellant.

*J. C. Blacklidge, C. C. Shirley* and *B. C. Moon*, for appellee.

Davis, C. J.—The appellee brought this action against the appellant, to recover damages for stock injured on appellant's railroad. The complaint is in two paragraphs, but inasmuch as the appellee failed to make any proof to sustain the first paragraph, it will not be noticed in the further consideration of the record.

The second paragraph reads as follows:

"The plaintiff, Elmer Burgan, alleges that on November 9, 1890, John A. Pierce was the owner of the north half of the southeast quarter of section thirty-two (32), township twenty-four (24) north, range five (5) east, in Howard county, Indiana, and said Pierce has all the time since continued to be, and now is, the owner of said real estate; that on said day the said John A. Pierce executed to the Frankfort, St. Louis and Toledo Railroad Company a deed for the right of way of said company across said real estate, said company being then about to construct a line of railroad through the county of Howard, extending from Toledo, Ohio, to the city of St. Louis, Mo.; that said deed of right of way was accepted by said railroad company, and said line of railroad constructed through the said Pierce's land, in accordance with such grant of right of way to said company. The plaintiff avers that said Frankfort, St. Louis and Toledo Railroad Company orally agreed, at the time said deed was made, that in consideration of said right of way grant of said John A. Pierce to said company, it would fence said right of way within a reasonable time, and make an over crossing over said railroad, and also make an under crossing if the nature of the land would per-

mit, and said oral agreement was reduced to writing, and, by the mutual mistake of said railroad company and said Pierce, the land of said Pierce was misdescribed in said written agreement, and was described therein as being in section twenty-six (26) instead of section thirty-two (32), as was intended by both the parties at the time; that said Pierce did not then own any real estate in section twenty-six (26), nor did said railroad company contemplate constructing a line of railway across said section twenty-six (26), and both parties intended said agreement to apply to the real estate owned by said John A. Pierce, which is correctly described as above stated.   The plaintiff avers that said written contract, as executed by said railroad company, is as follows:

"  'In consideration of the right of way, this day given by John A. Pierce, over the north half of the southeast quarter of section 26, range 5 east, township 24, Howard county, Ind., to the Frankfort, St. Louis and Toledo R. R. Co., said company agrees to fence said right of way within a reasonable time, to make an over-crossing, and an under-crossing if the nature of the land will permit, and to pass said Pierce and wife on the road to Toledo and return free of charge.

" 'THE FRANKFORT, ST. LOUIS AND TOLEDO R. R. Co.

" 'November 9, 1880.    By A. H. McVEY, Agt.'

"The plaintiff avers that said Frankfort, St. Louis and Toledo Railroad Company did, according to said agreement, within a reasonable time, fence said road, as by it agreed, and that it put in an under-crossing on said Pierce's land, and that it constructed upon said land, as agreed, an over-crossing for said Pierce; that said over-crossing was well and substantially constructed, and consisted of an opening in the fence upon each side of the track, and a plank crossing over the track, cattle-guards and wing fences upon each side of the track, con-

necting said cattle-guards with the right of way fence upon each side of the track.

"Plaintiff avers that soon after said crossing and fences were constructed by said Frankfort, St. Louis, and Toledo Railroad Company, under the name of the Toledo, Cincinnati and St. Louis Railroad Company, which company continued to own and operate the same until on or about the 6th day of June, 1886, when the defendant company became the owner of the same, in pursuance of a sale made of said company's right of way upon a decree entered in the Circuit Court of the United States for the district of Indiana, foreclosing a mortgage thereon, and the defendant company, ever since it took possession thereof, on said date, has been, and now is, in possession of said railroad, with its track and right of way; that said Toledo, Cincinnati and St. Louis Railway Company maintained said fence and said over-crossing in good repair, substantially as they were constructed by its predecessor, and at the time the defendant company took possession of said railroad through the land of said Pierce, said crossings, consisting of said openings and cattle-guards, and winged fences and planked driveway across the track, was open and visible, and was in use by the said Pierce and his tenants, in pursuance of the above mentioned contract made at the time said Pierce executed his deed for said right of way.

"The plaintiff avers that after the defendant company took possession of said railroad it wrongfully tore out said cattle-guards and winged fences of said crossing, and failed and refused to maintain the same, which cattle-guards and wing fences were a necessary part of said crossing; that said defendant company put gates upon each of its track where said crossing had been maintained, and that it wrongfully permitted the gates at said crossing, so put in by it, to become out of repair and

break down and become worthless; that by reason of said wrongful conduct on the part of the defendant, said farm crossing was rendered of but little value ; and that it became, and was, dangerous to drive stock over the same, on account of the great danger of stock straying upon the track of said railroad and being killed.

"Plaintiff avers that in the season of 1891 he was the tenant of said John A. Pierce, the owner of said real estate, and, as such tenant, was in possession and use of the part of the farm upon which said crossing was to have been maintained according to the terms of said agreement; that on or about the 14th day of September, 1891, the plaintiff was the owner of one mare, three years old, of the value of one hundred and thirty-five dollars ($135), and one horse, three years old, and, at said date, the mare and horse were in the pasture land belonging to said Pierce, of which the plaintiff was in possession as such tenant, and said mare and horse, by reason of the failure and refusal of the defendant to maintain the gates of said crossing, as required under said contract, entered upon the railroad track of defendant, through one of the defective gates of said crossing, and by reason of the wrongful failure and refusal of the defendant to maintain said cattle-guards and wing fences at said crossing, said mare and horse belonging to the plaintiff strayed upon and along the track of the defendant on said farm between the fences on each side of the right of way, and said mare and horse were there struck by an engine and train of cars owned and operated by the defendant, and the said mare was thereby killed, and said horse was damaged and decreased in value in the sum of fifty dollars ($50), all without any fault or negligence of this plaintiff contributing thereto; that the defendant has not paid to the plaintiff the damages sustained by

The Toledo, St. Louis and Kansas City Railroad Company *v.* Burgan.

him by reason of the killing of said mare and the injury of said horse, and said damages sustained by him, to wit, one hundred and eighty-five dollars ($185), are due and unpaid, and for said sum, with interest and costs, he asks a judgment against the defendant."

The first error assigned is that "the court erred in overruling the demurrer to the second paragraph of the complaint."

Counsel for appellant say: "It must be borne in mind, in construing this paragraph of complaint, that it is not an ordinary action at law for damages arising out of injury to animals because of a failure to properly fence a right of way, but is an action based solely upon the breach of contract set out in this paragraph of complaint." * * * "The theory of the appellee is, that under the terms of this agreement to construct the private crossing the railroad company was bound to put in both cattle-guards and wing fences." * * * "Our position is, that when the present company, the appellant herein, took possession of this railroad, and constructed gates at this crossing, connecting with the lines of fence upon its right of way, there was then a full and complete compliance with the agreement, and that the duty of maintaining the gate and keeping it closed rested upon appellee, and his failure to do so was at his peril." * * * "We most earnestly contend that * * * under the law the original company was not bound to put in these cattle pits and wing fences, but may have done so purely as a matter of choice and to prevent animals passing over the private crossing from escaping either way upon the right of way, and thereby endangering the operation of its trains over its road; if it did so, it was under no obligation to so continue to maintain them, neither was the appellant under any obligation to

maintain them, and had clearly the right to remove them.''

The argument of counsel for appellant in support of the first error assigned is predicated upon the foregoing propositions.

The questions involved in this case are neither numerous or complicated, and the consideration of a few propositions is all that is required to determine the sufficiency of the complaint. The *gravamen* of the action is to recover damages for injuries sustained by appellee, as tenant of the land owner, on account of the failure of appellant to discharge the duties imposed on it by the contract mentioned and set out in the complaint. *Toledo, etc., R. R. Co.* v. *Fenstemaker,* 3 Ind. App. 151; *Toledo, etc., R. R. Co.* v. *Cosand,* 6 Ind. App. 222, 33 N. E. Rep. 251.

The duty of the company was a continuing one running with the land. Rorer on Railroads, p. 621; *Midland R. W. Co.* v. *Fisher,* 125 Ind. 19; *Terre Haute, etc., R. R. Co.* v. *Schaefer,* 5 Ind. App. 86; *Lake Erie, etc., R. W. Co.* v. *Fishback,* 5 Ind. App. 403; *Bond* v. *Evansville, etc., R. R. Co.,* 100 Ind. 301.

It is not controverted but that the tenant had the same right of action, if any, that the land owner would have had under the same circumstances. Wood's Landl. and Ten., p. 1299; Taylor Landl. and Ten., sections 178, 212; Thornton on R. R. Fences and Private Crossings, section 264.

If it was conceded that the company was not originally bound, under the terms of the written contract, to adopt a style of crossing of which cattle-guards and wing fences were a necessary part, the conclusion would be inevitable that the company was required to construct a crossing reasonably fit for the purpose contemplated by

the contract.    Thornton   Railroad Fences, etc., sections 267, 289.

In other words, the original company was, under the terms of the contract, bound to build the fences and to make an over-crossing for the use and benefit of the land owner and his privies.   How this crossing should be constructed is not stated in the contract.   Whether it should be made with cattle-guards and wing fences is not disclosed.   In respect to the manner of the construction of the crossing, the contract is indefinite.   In this connection it is proper to call attention to the familiar rule that "when parties have, by their acts, given a construction to a contract entered into by them, the courts will adopt and enforce that construction."    *Ingle* v. *Norrington*, 126 Ind. 174.

In this case the demurrer admits that the company, in pursuance of the terms of the contract, constructed a crossing with cattle-guards and wing fences forming a necessary part thereof; that such crossing was maintained by the company for many years; that after 1886, and prior to 1891, but just when is not clear, the company removed the cattle-guards and wing fences, and erected gates in the right of way fences on either side of the railroad at that point; that the company suffered the gates to get and remain out of repair, etc.

Counsel for appellant insist, not only that the full duty of the company, under the agreement, was discharged when the crossing was made, but that appellant had the right to take out and remove the cattle-guards and wing fences, and, in lieu of such guards and fences, to erect gates upon each side of the track where the crossing had been made, and thenceforth that it was the duty of the land owner to maintain and keep up the gates.

The primary question to be determined is, when the company constructed the crossing with cattle-guards and

wing fences constituting an essential part of such crossing, was it bound to maintain said crossing for the use and benefit of the land-owner and his privies?

In *Miller* v. *Chicago, etc., R. W. Co.*, 66 Iowa, 546, it was held that where a railroad company constructs such crossing, whether bound to so construct it or not, the company is bound to keep the same in such repair to accomplish the purpose for which it was intended.

The court, in that case, says: ''The plaintiff had no right to construct such crossing or to repair it, for the reason that he had no right to enter upon the defendant's right of way for such purpose.''

The act of the company, in the original construction of the crossing in question, must be held to show conclusively, so far as the demurrer to the complaint is concerned, that it was of the kind and character contemplated by the parties. When constructed, the duty to maintain and keep such crossing in repair certainly devolved on the company. This theory having been acted upon by the company for years, appellant had no right, without the consent of the land owner, to remove the cattle-guards and wing fences, on the erection of gates upon each side of its tracks where said crossing had been maintained. If the gates, under the circumstances stated, were rightfully erected in lieu of the cattle-guards and wing fences, which is doubtful ( *Williams* v. *Clark*, 140 Mass. 238), and if it was the duty of appellee to maintain them (sections 1074, 1081, Elliott's Supp.), yet this would be no excuse for the wrongful removal of the crossing or any material part thereof, which it was the duty of appellant to maintain in pursuance of the construction placed on the agreement by the parties.

This contract was entered into in 1880. The statute was enacted in 1885, and was not intended to impair existing contract rights. Section 1081, *supra.*

The stock, in this case, was not injured on the crossing. The mare and horse entered upon the crossing through the defective gate, and thence, on account of the absence of the cattle-guards and wing fences, strayed upon and along said railroad track between the right-of-way fences upon said farm and were thereby injured. If the crossing, as constructed originally, had not been impaired by the removal of the cattle-guards and wing fences, the animals could not have strayed on and along said railroad track at the place they were injured.

Moreover, when it is made the duty of the company, either by statute or contract, to fence the right of way, or to construct crossings, the company is bound to keep such fences or crossings so constructed by it in repair, except provision to the contrary is made in the statute or contract. Wood Railway Law, p. 1558; *Louisville, etc., R. W. Co.* v. *Consolidated Tank Line Co.*, 4 Ind. App. 40.

This rule is not changed by section 1081, Elliott's Supp. That section provides that in the absence of contract or agreement to the contrary all gates and bars at farm crossings shall be constructed and maintained and kept closed by the owner of such farm crossing. When the land owner constructs a farm crossing, or when the railway company voluntarily, for the accommodation or convenience of the land owner, constructs such farm crossing, such owner is required to maintain and keep the gates closed. *Hunt* v. *Lake Shore, etc., R. W. Co.*, 112 Ind. 69.

When, however, as in this case, such crossing is constructed, under and pursuant to the terms of a contract, with wing fences and cattle-guards, there is no duty devolving on the land owner, by statute, to maintain it. The statute in question was not intended to change the contractual rights of the parties, and appellant could

not, by the removal of the cattle-guards and wing fences, and the erection of the gates, shift the responsibility of maintaining the crossing on to the land-owner under the circumstances disclosed in the complaint.

The cases of *Evansville, etc., R. R. Co.* v. *Mosier,* 114 Ind. 447, and *Pennsylvania Co.* v. *Spaulding,* 112 Ind. 47, are not in point on the questions involved in this case. The company was bound by the statute to securely fence the railroad. It was bound by the contract to put in the crossing. The construction of the fence along the right of way did not discharge the objections arising under the contract. If the crossing had been constructed with gates in the right of way fences, pursuant to the provisions of the statute, or voluntarily by the company for the accommodation or convenience of the land-owner, it would have been the duty of the land-owner or his tenant, under the statute, not only to keep the gates closed, but also to maintain and keep them in repair and in reasonably safe condition. But when the railroad company agreed in writing, in consideration of the grant of the right of way, to construct the crossing, and did, in pursuance of the agreement, construct a farm crossing, of which cattle-guards and wing fences were an essential part, the company was not in position to claim that the mere construction of such crossing was a full and final compliance with the terms of the contract, and that having so complied therewith, the company had the right, after maintaining the same for many years, to remove the cattle-guards and wing fences without the consent of the land-owner, and to erect in lieu thereof gates in the right-of-way fences, and thenceforth, without notice to the land-owner, to rely on him or his tenant to maintain and keep the gates in repair. As we understand counsel for appellant, it is conceded that such a crossing

could not be made without either cattle-guards and wing fences or gates or bars in the right-of-way fences.

If this is correct, there is no question, in our opinion, that it was not the duty of the land-owner to maintain and keep in repair the cattle-guards and wing fences during the many years they formed an essential part of the crossing, and we fail to see, if this is true, on what theory, under the circumstances disclosed in this case, it can be successfully contended that the duty was shifted to him to maintain and keep in repair the gates erected by the company in lieu of that part of the crossing removed by it. If the company violated its duty under the contract, either in removing the cattle-guards or wing fences, or by suffering the gates to become out of repair, break down and become worthless, it is no answer to say that appellee might have performed the duty incumbent on the company, and thus have prevented or lessened the damages. *Louisville, etc., R. W. Co.* v. *Sumner*, 106 Ind. 55.

So far as any objection has been pointed out, there was no error, in our opinion, in overruling the demurrer. Whether, on other grounds, or for other reasons, the complaint is insufficient, we are not bound to either inquire or determine.

The next error discussed is that "The court erred in overruling appellant's motion for judgment in its favor on the special verdict returned by the jury."

Counsel for appellant say: "The question of appellant's liability or nonliability is clearly presented by the findings of the jury. If, as contended by the appellee, under this contract made with appellant's remote predecessor company, the appellant was required to maintain cattle-guards, wing fences, and also maintain and keep the gates at the farm crossing, then it may be conceded that the appellant is liable."

616    APPELLATE COURT OF INDIANA,

The Toledo, St. Louis and Kansas City Railroad Company *v.* Burgan.

In this connection, we call attention to the fact that the cattle-guards and wing fences were, as shown by the finding, constructed by the railroad company, as a necessary part of said crossing, under and pursuant to the terms of the agreement which was the basis for the conveyance of the right of way, and that said crossing was maintained by said company with cattle-guards and wing fences in good repair, substantially as constructed, until after appellant took possession of said railroad, after which it tore out said cattle-guards and wing fences, and in lieu thereof put gates in the right-of-way fences upon each side of its tracks where said crossing had been maintained, and that the gates were permitted to become out of repair and break down; that in 1891, whether before or after the cattle-guards and wing fences were torn out does not appear, except inferentially, appellee was the tenant of said Pierce; that by reason of the removal of the cattle-guards and wing fences by appellant, and the failure to keep said gates in repair, the mare and horse of appellee, in 1891, entered upon the said railroad track of appellant, through said gate on the south side of said crossing, and strayed upon and along the track of appellant's road, on said farm, between the fences on each side of the right of way, which they could not have done if the cattle-guards and wing fences had been there, and said mare, of the value of $115, was struck by an engine and killed, and said "horse was badly injured and crippled about its legs, upon its hock and pastern joints," whereby he was depreciated in value and damaged to the extent of $50, but whether he was struck by the engine or cars, or whether he was injured in some other manner, does not appear. There is no finding that the gates, when erected, were substantial and suitable to turn stock.

It will suffice to say, in conclusion, on this branch of

the case, that if we are right in what we have said in the discussion of the demurrer to the complaint, there was no error in overruling appellant's motion for judgment in its favor on the special verdict of the jury.

It is next insisted that. because appellee had knowledge of the defective condition of the gate, and that his animals might, by reason of its unsafe condition, enter upon the railroad track, he has no right to recover, and that a new trial should be granted.

What we have heretofore said, disposes of this question. *Louisville, etc., R. W. Co.* v. *Sumner, supra.*

The cattle-guards and wing fences, when torn out, were, for aught that appears to the contrary, not only in complete repair, but were satisfactory to the land owner, and the evidence tends to prove that the gates in question were not, when constructed, either of good quality or properly made, and that they were, at all times, in a dilapidated condition, and unsuitable for the purpose of keeping animals off the right of way.

We have now considered all the points raised by counsel for appellant, and find nothing in them which would justify a reversal of the judgment of the court below.

The only remaining question for our consideration arises on the cross-error assigned by appellee. This is based on the action of the trial court in overruling appellee's motion for judgment in his favor on the special verdict, for $165.

The burden as to the injury of the horse was on appellee. It was incumbent on appellee to establish the proposition that his horse was damaged by reason of appellant's breach of duty arising out of the contract. It is conceded, so far as the discussion of this case by counsel for appellant is concerned, that appellee has all the rights that said Pierce would have had under the same circumstances, and on this theory the facts as to when,

where, and how the horse was injured are not found in such manner as to warrant a judgment in his favor for that amount.

Judgment affirmed.

Filed April 4, 1894.