ROSS, RECEIVER, *v.* INDIANA NATURAL GAS AND OIL COMPANY.

[No. 10,468.   Filed March 29, 1921.   Rehearing denied June 22, 1921.   Transfer denied April 21, 1922.]

1.   CARRIERS.—*Carriage of Freight.—Arrival of Cars.—Notice to Consignee.—Sufficiency.—Failure to Question.*—Where a consignee fails within the time allowed by the carriers demurrage rules to object to the sufficiency of a notice of the arrival of cars, he cannot be heard afterward to say that the notice was insufficient, it being presumed that it had no objection, and was satisfied therewith.   p. 223.

2.   CARRIERS.—*Carriage of Freight.—Demurrage Rules.—Construction.—Notice of Arrival of Cars.—Objections.*—A provision in demurrage rules, limiting the time for objecting to the sufficiency of carrier's notice to consignee of the arrival of cars "when notice has been given in substantial compliance with the requirements as specified by the rules," relates to the substance of the notice, and not to the manner in which it was communicated.   p. 223.

3.   CARRIERS.—*Carriage of Freight.—Action for Demurrage.— Notice of Arrival of Cars.—Receipt by Consignee's Agent.— Proof of Agent's Authority.*—In a carrier's action against a consignee to recover demurrage charges in which defendant contended that proper notice of the arrival of cars was not given to its agent duly authorized to transact that particular business, where the evidence showed that information concerning the arrival of cars had been given by the means of telegraph and telephone to some unidentified person in defendant's office, and that defendant received such information and acted thereon, *held* that the carrier was not bound to prove the authority of

220     APPELLATE COURT OF INDIANA,

Ross, Receiver, *v.* Indiana Nat. Gas, etc., Co.—78 Ind. App. 219.

the person who received the information in behalf of the consignee. pp. 224, 225.

4. CARRIERS.—*Carriage of Freight.*—*Notice of Arrival of Cars.* —*Relationship between Consignee and Employe Receiving Notice.*—The relation existing between a consignee of freight and the person in its office operating its telephone and telegraph and receiving from the carrier notice of the arrival of cars was not that of principal and agent, but of master and servant, and the acts of the servant in such case in the master's office under his supervision are in law the acts of the master as affecting liability for demurrage dependent on such notice. pp. 224, 225.

5. PRINCIPAL AND AGENT. — *Agency.* — *Proof.*—*Circumstantial Evidence.*—Whether an agency exists is a question of fact, and, like any other fact, may be proven by circumstantial evidence. p. 225.

6. CARRIERS.—*Carriage of Freight.*—*Notice of Arrival of Cars.* —*Service.*—*Sufficiency.*—A consignee of freight receiving information of the arrival of cars and acting thereon will not be permitted to question the authority of the person in its office through whom the information was received. p. 226.

7. APPEAL.—*Questions Presented.*—*Failure of Appellee to Assign Cross-Error.*—Appellee, not having assigned cross-error, is not in position to present any question as to the alleged erroneous admission of evidence. p. 226.

8. WITNESSES.—*Action for Demurrage.*—*Testimony from Record Showing Time of Arrival and Release of Cars.*—*Admissibility.* —In a carrier's action against a consignee to recover demurrage, it was proper for the trial court to permit a witness to testify concerning cars from a record made at the time of their arrival and at the time of their release. p. 226.

9. APPEAL.—*Assignment of Cross-Error.*—*Purpose.*—Cross-error may be assigned by appellee either to reverse or to sustain the judgment; but where assigned for the former purpose, the alleged errors must have been presented to the trial court for review, if reviewable, while if assigned to sustain the judgment, they need not be so presented, even though reviewable. p. 226.

10. CARRIERS.—*Carriage of Freight.*—*Action for Demurrage.*— *Notice of Arrival of Cars.*—*Sufficiency.*—Where a consignee of freight received all the information as to the arrival of cars to which it was entitled, and accepted and acted thereon without any objection to the manner in which the information was transmitted, it will be held to have assented thereto, and cannot avoid liability for demurrage charges merely because the notice was not in writing, although the demurrage rules provided that notice of the arrival of cars should be given in writing or as otherwise agreed to by the carrier and consignee. p. 227.

From Howard Circuit Court; *William C. Overton,* Judge.

Action by Walter L. Ross, receiver of the Toledo, St. Louis and Western Railroad Company, against the Indiana Natural Gas and Oil Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Walter A. Eversman, Van Brunt & Harker* and *Charles A. Schmettan,* for appellant.

*Edwin A. Hedrick, Conrad Wolf* and *Earl B. Barnes,* for appellee.

DAUSMAN, P. J.—Walter L. Ross, receiver of the Toledo, St. Louis and Western Railroad Company, instituted this action to recover demurrage. The trial resulted in a general finding and judgment for the appellee.

The railroad company is a common carrier, engaged in the transportation of freight by rail. Sixty-seven cars loaded with coal and consigned to appellee were brought by appellant's railroad to its station at Greentown. All of these cars, except five, represented interstate shipments. Appellee maintained a plant about two and one-half miles west of Greentown. Upon the arrival of the cars, appellant's station agent communicated the fact of their arrival to some one in appellee's office at the plant, giving the initials and number of each car, the name of the consignor, the contents, the weight of the car and the place from which it was shipped. These communications were made by telegraph or telephone to some person in appellee's office.

The appellee maintained a dumping station on its private track about half a mile from where its private track connects with appellant's main line; and the person at appellee's end of the wire informed appellant's station agent that appellee could receive only a limited

222    APPELLATE COURT OF INDIANA,

Ross, Receiver, *v.* Indiana Nat. Gas, etc., Co.—78 Ind. App. 219.

number of cars at a time and requested appellant to hold the cars on its storage track to await appellee's convenience with respect to unloading. From time to time the person at the other end of the wire informed appellant's station agent how many cars should be sent out and when to send them. Thereupon the appellant would deliver the cars to the unloading point and bring back the empty cars which were released by the appellee. Appellant's tariff (I. C. C. No. A-79) contains the following demurrage rules which are essential to an understanding of the controversy herein:

"Consignee shall be notified by carrier's agent in writing, or as otherwise agreed to by carrier and consignee, within twenty-four hours after arrival of cars and billing at destination, such notice to contain point of shipment, car initials and numbers and the contents, and, if transferred in transit, the initial and number of the original car."

"Note—When notice has been given in substantial compliance with the requirements as specified by the rules, the consignee shall not thereafter have the right to call in question the sufficiency of such notice unless within twenty-four hours after receiving the same he shall serve upon the delivering carrier a full written statement of his objections to the sufficiency of said notice."

"After the expiration of the free time allowed, a charge of $1 per car per day, or fraction of a day, will be made until car is released."

It is conceded that the demurrage rules are valid; and there is no controversy with respect to the amount that ought to be recovered if the appellee is liable at all. Appellee's defense, as presented in this appeal, rests solely on the following extremely technical grounds: (1) That the notice given by the carrier was not in writing; and (2) that there is no proof that the person in appel-

lee's office with whom the carrier communicated concerning the matters involved herein was appellee's agent and duly authorized to transact this particular business.

It should be carefully noted that the provision of the tariff relating to the form of notice is that "consignee shall be notified by the carrier's agent in writing, 1, 2. or as otherwise agreed to by the carrier and consignee." The rational inference is that this provision was inserted to insure a high degree of certainty. In this case, however, the appellee received all the information to which it was entitled under the rule. The information was full and accurate. Appellee acted upon it and never objected to its sufficiency. Having failed to avail itself of the remedy provided in the rules by serving upon the carrier a full written statement of its objections to the sufficiency of the notice within twenty-four hours after the receipt thereof, the appellee cannot be heard afterward to say that the notice was insufficient. Under such circumstances it must be presumed that the appellee had no objections to the notice and was entirely satisfied therewith. Otherwise the limitation put upon the time within which to make objection to the sufficiency of the notice, would become a nullity. It may be argued that this provision has no application to the case at bar for the reason that the notice was not in writing. Obviously, however, the words—"When notice has been given in substantial compliance with the requirements as specified by the rules" —must be construed to relate to the substance of the notice, not to the manner in which it is communicated; for it would not do to say that a notice was "substantially" in writing.

It is conceded that the parties never made an express agreement as to the manner in which the carrier should give, and the consignee should receive such notices. The

appellant contends, however, that since it had been the custom for years to give the notices by telephone or telegraph, therefore that manner of giving notice must be binding on the appellee in the absence of an objection thereto.  The appellee seeks to meet this contention by the counter contention that since the tariff did not take effect until May 23, 1910, and the cars on which demurrage is claimed arrived in June, September and November of that year, therefore the time was too short to establish a custom.  Whether or not there was an established custom in accordance with which the notices were given is immaterial.  By its failure to object to the notices, the appellee waived its right to question the sufficiency thereof, and it will be conclusively presumed that the appellee was entirely satisfied with their form and contents.

Appellee's office was connected with the carrier's office at Greentown by both telephone and telegraph. Some one in appellee's office, by means of those

3, 4.  instrumentalities, communicated from time to time with the carrier's agent concerning the cars. In that manner the appellee received from the carrier the information concerning the arrival of the cars, and in turn notified the carrier from time to time when to take out the empties and bring in other cars to be unloaded.  The identity of the individual who participated in these communications on behalf of the appellee is not shown, and there is no direct evidence of his authority in the premises.  Under these circumstances the appellee contends that the duty rested on the appellant to prove that the person to whom the notices of the arrival of cars were given was an agent of the appellee and duly authorized to transact that particular business; and that therefore the appellant has failed to make out a case.

Whether or not an agency exists is a question of fact; and, like any other fact, it may be proved by circumstantial evidence.

The undisputed evidence shows that during the period of time involved in this action the appellee's plant at Greentown was in charge of one L. L. Osborne; that Osborne was superintendent or general manager of the plant and had complete control of the office; that he was an experienced telegraph operator; that he had a telephone on his desk in the office; that he had under him two telegraph operators—a day man and a night man; and that Mr. Osborne had died sometime before the trial. On this state of facts the presumption is that the various notices of the arrival of cars were received on behalf of appellee by Mr. Osborne himself or by some one working under him in the office, and not by an interloper as the appellee naively suggests. The identity of the person who actually received the notices from the carrier and in turn directed the carrier when to bring in loaded cars and move the empties, is peculiarly within the knowledge of the appellee; and it would be a strange thing if appellee has no record showing the identity of that person. If Mr. Osborne participated in these communications on behalf of appellee, there could be no question of his authority. If an employe in his office and under his supervision and control transacted this business on behalf of the appellee the necessary authority will be inferred. However, in the strict technical sense, the relation existing between the appellee and the person who operated its telephone and telegraph in its office, was not that of principal and agent, but rather that of master and servant. The general rule is that acts done by a servant in the master's office, under his supervision and control, are in law the acts of the master himself. On the facts of this case

the carrier is not bound to prove the authority of the person who acted for the appellee; and since the appellee received the information and acted thereon it will

6. not be permitted to question the authority of the person through whom the information was received. *Jewett* v. *Lawrenceburgh, etc., R. Co.* (1858), 10 Ind. 539; *Isbell* v. *Brinkman* (1880), 70 Ind. 118; *Indiana, etc., R. Co.* v. *Adamson* (1888), 114 Ind. 282, 290, 15 N. E. 5; *Broadstreet* v. *McKamey* (1907), 41 Ind. App. 272, 83 N. E. 773; *McCord* v. *Illinois, etc., Ins. Co.* (1910), 47 Ind. App. 602, 94 N. E. 1053; *Merchants' & Farmers' Bank* v. *Johnston* (1908), 130 Ga. 661, 61 S. E. 543, 17 L. R. A. (N. S.) 969, 14 Ann. Cas. 546; *Pierce* v. *Dekle* (1911), 61 Fla. 390, 54 So. 389, Ann. Cas. 1912D 1355; *Gardner* v. *Gardner* (1850), 5 Cush. (Mass.) 483, 51 Am. Dec. 740; 21 R. C. L. 817 *et seq.;* 2 C. J. 423 *et seq.*

The appellee contends that the court erred in permitting the witness DeLong to testify concerning the cars from a record made at the time the cars

7, 8. arrived and at the time they were released. Not having assigned cross-error, appellee is not in a position to present this question; but, as the question is likely to arise on the next trial, we deem it our duty to say that the trial court was right in that matter.

Judgment reversed; and the trial court is directed to grant a new trial.

## ON PETITION FOR REHEARING.

DAUSMAN, J.—Cross-error may be assigned for either of two widely different purposes, viz.: to reverse the judgment, or to sustain the judgment. Where

9. the appellee is dissatisfied with the judgment and assigns cross-error for the purpose of procuring a reversal he must have presented the alleged errors to the trial court for review, if they are reviewable; for

in such cases his attitude is that of an appellant.   But where the appellee is content with the judgment and assigns cross-error for the sole purpose of sustaining that judgment, the alleged errors need not be presented to the trial court for review, even if reviewable.   Where a party is satisfied with the judgment and is interested only in maintaining that judgment, it would be illogical and hazardous to ask for a new trial.   To ask a new trial for the sole purpose of laying a foundation for an assignment of cross-error whereby to sustain the judgment, involves a direct conflict of ideas.   The statement on this point in the original opinion is not erroneous. *Evansville, etc., R. Co.* v. *Mosier* (1888), 114 Ind. 447, 17 N. E. 109; Ewbank's Manual (2d ed.) §§20, 139, 140, 206; Elliott, App. Proc. §415 *et seq.*   See, *Merritt* v. *Richey* (1891), 127 Ind. 400, 27 N. E. 131; 3 C. J. 1404 and cases there cited.

The task of construing the sections of the tariff which are involved herein, and of determining the effect of appellee's conduct with respect thereto, has been 10. troublesome.   But we are still of the opinion that since the appellee received all the information to which it was entitled, accepted and acted upon that information, and then held the cars day by day, thereby depriving appellant and the public of the use of them, it should not be permitted to escape the payment of demurrage merely on the ground that the information was not communicated in writing, if it was not in writing. By its failure to object to the manner in which the information was transmitted, the appellee must be held to have assented thereto; and it follows that the information was given in accordance with the agreement of the parties

Rehearing denied.