HOWELL *v.* BLACKBURN.

[No. 29,417.   Filed January 24, 1957.]

244

246

Lee M. Bowers, Arthur J. Palmer, James W. Bowers, and Bowers, Feightner & Palmer, all of Huntington, for appellant.

Frederick M. Mowrer and William P. Spencer, of Huntington, for appellee.

BOBBITT, J.—The parties hereto were candidates for the office of Mayor of the City of Huntington in the city election held on Tuesday, November 8, 1955. The City Election Board declared appellant Howell duly elected Mayor of such city and issued a certificate of election to him. A petition for recount[1] was then filed by appellee-contestor, and Recount Commissioners were duly appointed. After an examination of all the ballots cast for Mayor in such election, the Recount Commissioners found that appellant Howell had received 3,200 votes and appellee Blackburn had received 3,185 votes. Appellee then filed a petition for contest[2] in the Huntington Circuit Court alleging as grounds therefor,

---

1. See Acts 1945, ch. 208, §§324-340, being §§29-5401—29-5417, Burns' 1949 Replacement for Recount Statute.

2. See Acts 1945, ch. 208, §§341-348, being §§29-5501—5508, Burns 1949 Replacement.

"mistake or fraud in the official count of the votes"[3] cast for the office of Mayor of the City of Huntington, Indiana.

From a judgment declaring appellee Blackburn to be duly elected to the office of Mayor of Huntington this appeal is prosecuted.

Appellant assigns as error the overruling of his motion for a new trial. Among the specifications or reasons for a new trial are (1) error of the trial court in counting 101 ballots for appellee-contestor; and (2) in failing to count 86 ballots for appellant-contestee.

Appellee-contestor has assigned cross-errors as follows:

"1. The court erred in over-ruling the objections of the appellee to, and admitting in evidence and counting, as valid votes for appellant (contestor) the following exhibits offered by the appellant:

Numbers 30, 44, 50, 54, 66, 140, 147, 149, 153, 194, 219, 224, 255, 312, 317, 441, 452, 475, 516, 520, 525 and 533.

"2. The Court erred in sustaining the objections of the appellant to, and in refusing to admit in evidence and refusing to count the following exhibits as valid votes for the appellee (contestee) offered by the appellee:

Numbers 5, 11, 127, 128, 157, 163, 164, 176, 241, 242, 243, 295, 379, 466 and 511."

These exhibits are original ballots; they are properly in the record and this court will examine them to determine whether in our judgment they were properly counted or excluded by the trial court. *Lumm* v. *Simpson* (1935), 207 Ind. 680, 684, 194 N. E. 341.

In the absence of fraud, election statutes generally will be liberally construed to guarantee to the elector an

3. Acts 1945, ch. 208, §342, being §29-5502, (Fourth) Burns' 1949 Replacement.

opportunity to freely cast his ballot, to prevent his disfranchisement, and to uphold the will of the electorate. *Brown* v. *Grzeskowiak* (1951), 230 Ind. 110, 128, 101 N. E. 2d 639.

The rule by which we are governed in this case was ably stated in *Conley* v. *Hile* (1935), 207 Ind. 488, 499, 193 N. E. 95, and reaffirmed in *Dowden* v. *Benham* (1955), 234 Ind. 103, 109, 123 N. E. 2d 872, and is as follows:

" 'While the statutes seek to keep the voter's ballot secret, so as to prevent corruption in elections, its primary purpose is to provide a means for the selection of officers by the free and untrammeled choice of honest, qualified voters; and, while a ballot which is intentionally mutilated, or on which the marking does not occur in the space provided by statute, or which is marked with characters other than those provided by statute, cannot be counted regardless of the apparent honesty and good intention of the voter, ballots will be counted which indicate an effort to comply with the statutory requirement as to the manner of marking, notwithstanding variation from the mark made by the average individual caused by unskillfulness, physical infirmity, bad eyesight, or light, or conditions not conducive to accuracy; and where markings are in the proper place, and there is an effort to make the statutory cross-mark, irregularities in the marking will be attributed to those causes unless the ballot upon its face fairly imports an intentional dishonest purpose.' "

The statutory rules by which we are also governed and which apply to the situations with which we are here confronted, are as follows:

"Rule 1. The whole ballot is void if the voter . . . (d) makes any mark thereon other than a cross X mark in a voting square or circle, or other than the writing in of a name for the purpose of voting; except that an erasure or a mark other than a cross X mark made in a voting square shall not make the ballot void, but shall render it blank as to

the office, party position or question in connection with which it is made. A cross X mark is any straight line crossing any other straight line at any angle, but no ballot shall be declared void or partially blank because a cross X mark thereon is irregular in form. In applying any provision of this section to a primary election, the term 'voting square' shall include the voting space at the left of the name of a candidate on the primary ballot.

. . . .

"Rule 6. If the cross X mark touches a circle or a square, it shall be counted as if in such circle or square, but any mark other than a cross X mark in the circle or square, which touches no circle or square shall be treated as a distinguishing mark.

"Rule 7. Any ballot which shall bear any clearly evident distinguishing mark or mutilation shall be void, and shall not be counted, and any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate, or candidates, affected thereby."

Acts 1947, ch. 156, §1, p. 481, being §29-5218, Burns' 1949 Replacement.

Each of the parties hereto raises the question of waiver and estoppel in relation to certain ballots. See: *Dobbyn* v. *Rogers* (1948), 225 Ind. 525, 547, 76 N. E. 2d 570.

Where a party has successfully offered in the trial court a ballot essentially similar to one, the admission of which he now seeks to prevent, or where he successfully objected in the trial court to the admission of a ballot, essentially similar to one the admission of which he now seeks to effect, he is estopped to urge the admission or exclusion, as the case may be, of the relevant ballot. However, this rule is not applicable where there is a lack of similarity between the defects in the ballots to be compared.

Where the trial court's actions with regard to both the ballot in question and the ballot, or ballots, with

which it is sought to be compared, has been assigned as error, or cross-error, and all of such ballots are before us on appeal, the comparison will be made as a matter of course.

The fact that we have mentioned no specific application of this rule in this case may be considered to indicate either, that for the reasons expressed above, the rule of estoppel does not apply, or, that in cases where it does apply and has been properly raised, we have made the comparisons requested, and the results of such comparisons are reflected in the totals of the ballots counted by this court.

Because certain ballots have similar characteristics and since the same general rules must be applied to specific objections thereto, we have separated the contested ballots into certain categories or groups and will consider the errors and cross-errors assigned in that manner.

*First,* we shall consider errors assigned by appellant as they appear in his motion for a new trial. Appellant has waived objections to the inclusion of all except two of the 101 ballots cast for appellee Blackburn,[4] and to the exclusion by the trial court of 21 of the 86 ballots cast for himself.[5]

*Group One.* These are ballots which have a "spur" or "prong" at the end of one of the lines which form

4. Ballots cast for appellee Blackburn assigned as error and now waived by appellant are Exhibits numbered 1, 4, 13, 31, 32, 33, 38, 55, 56, 57, 58, 59, 61, 87, 88, 89, 95, 98, 99, 101, 102, 103, 104, 105, 106, 107, 108, 112, 113, 115, 121, 122, 123, 124, 129, 130, 132, 133, 134, 156, 158, 160, 165, 166, 167, 168, 169, 171, 172, 174, 175, 206, 207, 208, 212, 233, 244, 296, 301, 329, 332, 333, 334, 335, 336, 337, 338, 377, 378, 380, 381, 382, 414, 415, 416, 417, 420, 421, 422, 423, 425, 426, 430, 431, 465, 467, 468, 469, 470, 471, 472, 481, 482, 483, 501, 503, 504, 505 and 507.

5. The 21 ballots cast for appellant which he here waives are Exhibits numbered 7, 18, 21, 22, 45, 47, 48, 51, 71, 73, 77, 117, 136, 143, 149, 199, 309, 314, 346 383, 443 and 532.

the cross (X).[6] Such "spurs" or "prongs" which appear to have been deliberately made are distinguishing marks and invalidate the ballot.

Rule 7.[7] Paragraphs 37, 40, 47, 50, 52 and 59.[8] However, if the "spur" or "prong" clearly appears to be the result of inadvertence or infirmity, it does not invalidate the ballot. Paragraphs 41, 51 and 55.

The "spur" or "prong" on Exhibits numbered 259 and 514 appear to have been made as the pencil was inadvertently lifted in the act of retracing. On such exhibits the "spurs" do not show a uniform width of line, nor do they indicate a consistent weight application to the pencil such as would indicate a wilful and deliberate marking for the purpose of distinguishing the ballot. Hence, these ballots should have been counted for appellant.

The "spurs" or "prongs" on Exhibits numbered 70, 248, 387, 394 and 484 have a certain uniform consistency, both in width and intensity of the lines. They appear to have been deliberately made as distinguishing marks and these ballots were properly excluded by the trial court.

*Group Two.* Exhibit numbered 69 is a mixed ballot which bears an extra spurlike line or mark near the center of the upper left segment of the cross.

Exhibit number 247 is a straight ballot which has an extra mark at the intersection of the cross. It is as-

---

6. When "cross" is referred to hereafter, it shall mean a cross in this form, X.

7. When reference is made to a rule, it refers to a certain rule in §29-5218, Burns' 1949 Replacement.

8. When reference is made to paragraphs, reference is had to paragraphs in *Dowden* v. *Benham* (1955), as numbered in 123 N. E. 2d 872.

serted that these marks are merely retracings. However, we do not believe that the extra marks on these ballots are retracings within the rule as stated in Paragraph 44. In our opinion they are distinguishing marks under Rule 7 and Paragraph 4, and these ballots were properly excluded by the trial court.

*Group Three.* Exhibits numbered 138, 249, 345, 145, 313, 512 and 513 are all straight ballots and were properly excluded. While certain markings on these ballots might conceivably be the result of an attempt to retrace the lines or strokes which form the cross, however, in our opinion, the cross-strokes form two distinct parallel lines so clearly as to render them distinguishing marks which invalidate the ballots. Paragraphs 3, 28, 29 and 35.

*Group Four.* Exhibits numbered 8, 17, 23, 72, 139, 217, 218, 256, 308, 344, 347, 399, 442 and 485 are straight party ballots and Exhibit number 310 is a mixed ballot, all of which are marked with cross-strokes forming two distinct and separate lines coming together to form either a "V" or a "Y." Such markings have been held to be distinguishing marks. Paragraphs 22, 24, 31, 33, 43, 48 and 61. See also, Rule 7.

These ballots were, therefore, properly excluded.

*Group Five.* Exhibits numbered 24, 25, 52, 86, 195, 250, 432 and 438 are all straight ballots and the crosses or segments thereof are composed of a network of many lines with clear patches of the white paper showing between the lines. These are distinguishing marks and these ballots were properly excluded. Paragraphs 23, 26 and 37.

*Group Six.* Exhibits numbered 75, 83 and 197 are straight ballots which are so marked that one cross-

stroke of the cross, or a segment thereof, is formed by two lines which meet at the ends, but spread apart in or near the center to form a figure resembling a strung bow. These ballots were properly excluded as bearing distinguishing marks. Paragraphs 20, 21 and 41.

*Group Seven.* Exhibit number 398 is a straight ballot which is marked in the circle with a character resembling the letter "N." This is a distinguishing mark and this ballot was properly excluded. Paragraphs 19 and 27.

*Group Eight.* Exhibit number 196 is a straight ballot marked with a figure "4." Exhibit number 118 is a mixed ballot marked by a check mark in the squares opposite the names of the candidates. These are marks other than a cross within a voting circle or square. These ballots were properly excluded. Rule 1(d). Paragraphs 10, 18 and 49.

*Group Nine.* Exhibit number 215 is a straight ballot and contains a mark $\frac{1}{4}$ inch long parallel to the lower left segment of the cross. This is clearly a distinguishing mark and this ballot should have been excluded. Rule 6. Paragraph 11.

Exhibit number 148 bears some similarity to Exhibit number 215. It also has an extra mark $\frac{1}{4}$ inch long, but which touches the end of the lower segment of the cross. However, it is clearly apparent from the fact that the other three segments of the cross are carried out to the circle, that this mark was made for the purpose of making the cross uniform by also extending the left segment thereof out to the circle. The intent of the voter is so clearly expressed here that it excludes the possibility of a distinguishing

mark. This is a valid ballot and should have been counted for appellant.

*Group Ten.* Exhibit number 444 was apparently excluded by the trial court because it appeared to fall within the parallel line rule. There is an exception to this rule when the lines clearly appear to be the result of a split pencil. Paragraph 58. The lines on this ballot bear every indication that they are the result of a defective pencil. The same is true of ballot number 198. These are valid ballots and should have been counted for appellant.

*Group Eleven.* Exhibits numbered 6, 20, 49, 53, 137, 189, 193, 260, 311, 343, 393, 440, 446, 448, 489 and 519 are straight ballots. On all of these, some segment of the cross within the circle is retraced. However, it is obvious that the voter in each instance was only retracing the line of the cross. In instances where there is any separation of the lines it is so slight as to exclude their consideration as being parallel lines under the rule as stated in Paragraphs 3, 28, 29 and 35.

These ballots are valid and it was error to exclude them.

*Group Twelve.* Exhibits numbered 375 and 376 represent ballots cast for appellee which were admitted by the trial court and are challenged by appellant here on appeal. These are mixed ballots and appellant concedes that in each case the cross in the square opposite appellee's name is a valid mark. However, on each ballot the voter voted for both the Republican and Democratic candidates for the same councilmanic district. The crosses in all the squares are made with a blue pencil such as is supplied by the

election board at the polls. Under Rule 4 these ballots could not be counted for the office of Councilman, where the voter marked his ballot for both the Republican and Democratic candidate for the same office, but such ballot was valid as to the other offices. However, there is on each of these ballots a mark which was evidently made by the use of an ordinary lead pencil marking back and forth across the page through the names, squares and voting marks where the voter had voted for two candidates for Councilman for the same district. Appellant asserts that these ordinary lead pencil marks are marks other than a cross in the voting square or circle which invalidate the entire ballot under Rule 1(d). It is apparent that the markings made with the lead pencil were made by some member of the election board. For the voter to have made these marks with an ordinary lead pencil, we must assume that he laid down the blue pencil with which he had marked his ballot and picked up the lead pencil to use in crossing out the two names on each ballot. This seems to us to be wholly unlikely. In our opinion these lead pencil markings were clearly made by a member of the election board and are not such a distinguishing mark as would invalidate the entire ballot. Since these ballots were properly voted for appellee Blackburn they were properly admitted by the trial court.

Acts 1945, ch. 208, §343, being §29-5503, Burns' 1949 Replacement. Paragraph 68 and 69.

*Second:* From a careful consideration of the questions raised by appellant's assignment of error and discussed in his brief, we find that 22 ballots cast for appellant were erroneously excluded by the trial court, and that two ballots for appellee which were admitted

below over the objections of appellant were good ballots and were properly counted by the trial court for appellee. Therefore, on the basis of appellant's assignment of errors the result would be 3,233 votes for appellant Howell, and 3,212 votes for appellee Blackburn.

Hence, the result of the rulings on appellant's assignment of error requires a consideration of appellee's cross-errors.

Appellant agrees that the ballots assigned by appellee as cross-errors are properly before this court. We concur. Since the cross-errors herein are assigned for the purpose of affirming the judgment, the questions raised by them need not have been presented to the trial court for review. *Ross, Receiver* v. *Indiana Nat. Gas, etc., Co.* (1922), 78 Ind. App. 219, 226, 130 N. E. 440, 131 N. E. 794.

We recognize the rule as stated in *Anderson Lumber, etc., Co.* v. *Fletcher* (1950), 228 Ind. 383, 387, 89 N. E. 2d 449, that, "Questions assigned by cross-errors cannot be presented for the first time on appeal." However, this rule is limited to those cases where the appellee is dissatisfied with the judgment and assigns cross-errors for the purpose of procuring a reversal of that judgment. It does not apply where the appellee is satisfied with the judgment and files cross-errors only for the purpose of sustaining the net result which it affords. *Town of Windfall City* v. *First Nat. Bank* (1909), 172 Ind. 679, 689, 87 N. E. 984, 89 N. E. 311; *Ross, Receiver* v. *Indiana Nat. Gas, etc., Co., supra* (1922), 78 Ind. App. 219, 226, 130 N. E. 440, 131 N. E. 794.

BALLOTS FOR APPELLANT-CONTESTEE, AD-
MITTED OVER THE OBJECTIONS OF AP-
PELLEE-CONTESTOR AND ASSIGNED
HERE AS CROSS-ERRORS.

*Group 1a.* Exhibits numbered 520 and 525 are mixed
ballots and each bears a distinct dot outside the square
which are made with the same type pencil as
the cross opposite the various candidates' names.
These are distinct marks, other than cross marks
in the squares and these ballots should not have been
counted for appellant. Rule 6.

*Group 2a.* Exhibits numbered 194 and 452 are
straight ballots which have parallel lines in the upper
right segments of the cross. The extra line here
appears to have been intentionally made for some
deliberate purpose other than retracing. These
ballots were erroneously counted for appellant. Para-
graph 6.

*Group 3a.* Exhibit number 516 has a cross in the
circle above a party column and a cross in two of the
squares in the same party column. This is a
statutory distinguishing mark and this ballot
was erroneously counted for appellant. Rule 5.

*Group 4a.* The simulated "spurs" and minor irregu-
larities in making the cross on Exhibits numbered 30,
66, 147, 255, 475 and 533 appear to be due to
poor light, bad eyesight, or infirmities of old age,
and these ballots were properly admitted and
counted for appellant by the trial court.

However, this does not appear to be the case with
Exhibits numbered 224 and 317. On these ballots the
"spurs" appear to be distinct and separate lines de-
liberately and intentionally made by the voter. Such

"spurs" are distinguishing marks and these ballots should not have been counted for appellant. Rule 7. Paragraphs 37 and 40.

*Group 5a.* Exhibits numbered 54, 140, 149, 153 and 312 have crosses made with more than one application of the pencil. However, the additional lines appear clearly to be retracings and these ballots were properly counted for appellant. This is not true, however, with the lines which appear within the circle on Exhibits numbered 44, 50 and 441, which consist of two distinct parallel lines. Such lines are distinguishing marks and these ballots should not have been counted for appellant. Paragraphs 3, 28, 29 and 35.

*Group 6a.* Exhibit number 219 is a mixed ballot having a good cross in the square opposite appellant's name, but check marks crossed by other lines in the squares opposite the names of other candidates. This is a good ballot for appellant and should have been counted for him. *Dobbyn* v. *Rogers, supra* (1948), 225 Ind. 525, 536, 76 N. E. 2d 570; Rule 1(d) exception.

## BALLOTS FOR APPELLEE EXCLUDED
## BY THE TRIAL COURT.

*Group 7a.* Exhibit number 163 is a mixed ballot and the lower line segment of the cross in the square opposite appellee's name is crossed by a distinct line which appears to be intentionally made and is a distinguishing mark. Paragraph 35. This ballot was properly excluded by the trial court.

Exhibit number 466 is a straight ballot. Extending parallel to the lower right segment of the cross is a

line ½ inch long, heavier than the lines forming the cross and extending outside the circle for ¼ of an inch. This is a distinguishing mark which appears to be intentionally made and the ballot was properly excluded.

*Group 8a.* Exhibit number 176 is a mixed absentee ballot marked with a common lead pencil. There extends from the end of two segments of the cross opposite appellee's name, feathering lines resembling a "spur." However, they do not appear to have been deliberately made, but rather the result of inadvertence and failure to lift the pencil cleanly from the paper. Such marks do not invalidate the ballot. The same is true of Exhibits numbered 243 and 511 which are the same type ballots with similar markings in the circle. It was error to exclude these ballots and they should have been counted for appellee. Paragraphs 41 and 51.

*Group 9a.* Exhibit number 379 is a straight ballot. The line from the upper left to the lower right of the cross has been retraced and in the lower segment the voter's pencil appears to have slipped so as to vary slightly from the original line. This appears to us to be clearly a retracing. It is difficult to understand how such a mark could have been deliberately made for the purpose of distinguishing the ballot. This is a good ballot and should have been counted for appellee. Paragraph 44.

*Group 10a.* Exhibit number 5 is an absent voter's ballot marked in the circle with a pen. The short "feathering" lines at the end of two segments of the cross are clearly the result of infirmity and the failure to lift the pen cleanly at the end of the stroke. This is a good ballot and should have been counted for appellee.

*Group 11a.* Exhibits numbered 157, 164, 241 and 242 were excluded by the trial court as bearing a "V" or "Y" or a "network of lines." We have carefully examined these ballots and have concluded that all of these marks are the result of retracings and were not made for the purpose of distinguishing the ballots and should not be so considered. These ballots were erroneously excluded and should have been counted for appellee.

*Group 12a.* Exhibit number 11, a straight ballot, was excluded by the trial court under the rule relating to parallel lines. It is clearly evident from a microscopic examination of the lines within the circle that they are the result of a split or defective pencil. The distance between them is not only uniform, even where the lines curve slightly, but they are the proper distance apart to have been made by a split blue pencil. This is a good ballot and should have been counted for appellee. Paragraph 58.

*Group 13a.* Finally, there are three mixed ballots, Exhibits numbered 127, 128 and 295, which were voted for appellee and excluded by the trial court on authority of *Dobbyn* v. *Rogers, supra* (1948), 225 Ind. 525, 76 N. E. 2d 570, where this court, at page 539 of 225 Ind., said:

"Appellee's Exhibit 40, which is a mixed ballot, contains a cross in a voting square other than the Arthur Rogers square. It appears that the voter attempted to obliterate this cross by drawing his pencil through the same numerous times. As a result of this attempt there appears a large blue spot covering the entire cross. This spot or smudge is more than an erasure or a mark and therefore amounts to a distinguishing mark. This ballot should not have been counted."

In so ruling, the court in the Dobbyn case, for reasons which are not apparent from the language used in the

opinion, elected not to apply the part of Rule 1(d) upon which we relied in our ruling on Exhibit number 219 herein, which was a ballot for appellant.

The court, as will be observed from the quotation above, does not fully describe the ballot in the Dobbyn case, nor did it detail the circumstances which persuaded the court in that case to hold that the "spot" or "smudge" was more than an erasure or mark.

On Exhibits numbered 127 and 128 of the three ballots here in question, it clearly appears that there has been an attempt by the voter to mark out the cross, or part of the cross, in a square other than that opposite the name of the candidate for Mayor. These are mixed ballots. On each one of them the voter has made a proper cross in the squares opposite the names of Republican candidates which precede the name of the candidate for City Councilman for the Fourth District.

It is apparent that on each of these ballots the voter started to mark a cross in the square opposite the name of the Republican candidate for Councilman for the Fourth District, and having partly completed the same, realized that he desired to vote for the Democratic candidate for Councilman for this district. He then attempted to cancel out the marks made opposite the Republican candidate's name by smudging them with the blue pencil, and then proceeded to make a proper cross in the square opposite the name of the Democratic candidate for Councilman for the Fourth District.

On Exhibit number 295 the voter has made a proper cross in the six squares opposite the names of the Republican candidates which precede the name of the candidate for Councilman for the Fifth District. Here, again, it is apparent that the voter started to mark a cross in the square opposite the Republican candidate's name, then crossed over and made a proper cross in the

square opposite the Democratic candidate for Councilman for the Fifth District. He then apparently marked out the part of the cross which he had started to make in the Republican square by marking over it with a blue pencil.

Under the above circumstances it seems apparent to us that the marks, which the voters of each of these ballots attempted to obliterate, were made through inadvertence or mistake and the fact that his intent was not to make a clearly evident distinguishing mark or mutilation, but was only to repair the results of his inadvertence or mistake, is so obvious as to effectively exclude the possibility of an intent to distinguish the ballot.

It is our opinion that the intent of the voter is so clearly expressed on the face of these ballots that this rule must control. Therefore, these ballots fall within the exception of Rule 1(d) and the "smudge" or "spot" which appears in the square opposite the Republican candidate for Councilman for the Fourth District on Exhibits numbered 127 and 128, and in the square opposite the Republican candidate for Councilman for the Fifth District in Exhibit number 295 invalidate only the vote for these offices. It was error for the trial court to exclude these ballots *in toto* and they should have been counted for appellee. *Dowden* v. *Benham, supra* (1955), 234 Ind. 103, 109, 123 N. E. 2d 872. Paragraph 67.

By the process of stipulation and waiver the total votes uncontested in this court are as follows:

|  | Howell (Appellant) | Blackburn (Appellee) |
|---|---|---|
| Stipulated at beginning of trial | 3,009 | 3,038 |

| | | |
|---|---|---|
| Ballots admitted during trial without objection | 77 | 73 |
| Ballots admitted during trial over objections, but objections waived on appeal | 10 | 12 |
| Ballots admitted at end of trial and objected to at that time but waived on appeal | 93 | 87 |
| Total votes uncontested in this court | 3,189 | 3,210 |
| Contested votes counted by this court | 32 | 15 |
| Total valid ballots cast | 3,221 | 3,225 |

Appellee Blackburn having received a majority of the valid votes cast, he was elected.

The judgment of the trial court is, therefore, affirmed.

Judgment affirmed.

Achor, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 139 N. E. 2d 905.