## HOY, MAYOR, *v.* STATE, EX REL. BUCHANAN.

[No. 20,904. Filed May 28, 1907.]

1. PLEADING. — *Complaint.—Specific Allegations.—Mandamus.— Elections.*—A petition in mandamus specifically showing that relator was not declared elected by the city canvassing board; that another person was declared elected, and that such other person duly qualified, shows that such person accepted the office and that he is an adverse claimant to relator, although there is a general allegation that such person never accepted such office nor made any claim thereto. p. 514.

2. ELECTIONS. — *Certificate of Election. — Evidence.—Collateral Attack.*—A properly executed certificate of election is *prima facie* evidence of the holder's election, in a direct attack on the validity of such election, and conclusive evidence thereof on a collateral attack. p. 515.

3. MANDAMUS.—*Quo Warranto.—Elections.—Remedies of Claimants.*—Mandamus is not, but *quo warranto* is, a proper remedy on behalf of a claimant to a public office, who has not at least a *prima facie* right to such office. p. 516.

4. OFFICERS.—*Eligibility.—When Attaches.—Elections.*—The ineligibility of persons to hold a city office as prescribed by §3470 Burns 1905, Acts 1905, p. 219, §46, providing that no officer, employe, agent or servant of any corporation, firm, company or person holding or operating under a city franchise, or having any contract with the city, shall be eligible to a city office, refers to the time when the term of office begins and not to the time of the election to such office. p. 516.

5. SAME.—*Ineligibility.—Notice to Voters.*—The voters of a city are not presumed to take notice that a certain candidate held, at the time of the election, an office in a private corporation

with which such city had some contractual relations which, if they existed at the time his term began, would render him ineligible to hold the office. p. 520.

6. OFFICERS. — *Ineligibility.* — *Notice.* — Before a candidate receiving a smaller number of votes than his opponent can successfully assert title to the office, he must show not only that his opponent was ineligible, but that such fact was known to the voters, and that they also knew the time of the beginning of the term. p. 520.

7. SAME.—*Duty to Serve.*—Persons elected to a public office, if eligible, are under a duty to serve. p. 520.

8. SAME.—*Ineligibility.*—*Removal of.*—*Rights of Voters to Presume.*—Voters, in electing a candidate to a public office, have the right to assume that he will free himself from any disabilities before the beginning of his term. p. 521.

From Boone Circuit Court; *Albert D. Thomas,* Special Judge.

Action by the State of Indiana, on the relation of Mortimer Buchanan, against John H. Hoy, as mayor of the City of Lebanon. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Ira M. Sharp* and *B. F. Ratcliff,* for appellant.

*Higgins & Holloman* and *Terhune & Adney,* for appellee.

JORDAN, J.—This is an action for a writ of mandamus instituted on June 5, 1906, by the State of Indiana, on relation of Mortimer Buchanan, to compel appellant, mayor of the city of Lebanon, Indiana, to recognize the relator as a member of the common council of said city and to permit him to act as such in the proceedings of said council. On the day aforesaid, upon the filing of the petition, an alternative writ of mandamus was issued, commanding the appellant forthwith to recognize the relator as a member of said council, or, in default thereof, that he appear in court at 10 o'clock a. m. on June 16, 1906, and show cause, etc. On the last-mentioned day appellant appeared in court and demurred to the alternative writ and petition for want of sufficient facts. The demurrer was overruled, to which he

excepted. On June 19, 1906, he filed his answer to the alternative writ and petition in three paragraphs, the first of which was the general denial. The second and third set up affirmative matter. Demurrers were sustained to each of the latter paragraphs of answer, and thereupon appellant withdrew the general denial and refused to plead further. A judgment was thereupon rendered by the court, awarding a peremptory writ of mandamus.

The petition for the alternative writ alleges that the city of Lebanon, Boone county, Indiana, is duly incorporated under the general laws of the State of Indiana, and has a population of less than ten thousand inhabitants, and is divided into three wards; that appellant is the duly elected, qualified, and acting mayor thereof; that at the regular general election held in said city on November 7, 1905, for the election of city officers, there were four candidates for the office of councilman-at-large, to wit, Roscoe Bratton, O. Rush Daily, Mortimer Buchanan, the relator, and William Means; that at said election, of all the votes cast for councilman-at-large, Roscoe Bratton received 656, O. Rush Daily received 649, Mortimer Buchanan received 626, and William Means 603; that the relator on said November 7, 1905, was and for more than two years prior to the commencement of this suit and up to this time has been, a *bona fide* resident and legal voter of said city, and has held no other office of trust or profit whatever, and during said time has been eligible to hold the office of councilman of said city; that on said November 7, 1905, and continuously from said date, said O. Rush Daily was and has been, and now is, ineligible to hold said office of councilman for the following reasons: "The American Trust Company is a corporation organized and operating under and by virtue of the laws of the State of Indiana, having its main office in said city of Lebanon, and as such corporation was doing business therein prior to said elec-

tion and continuously to this time. Prior to said election and continuously to this time said O. Rush Daily was, is, and during all of said time has been, a director of said company and the vice-president thereof, and has held himself out to the public in such capacity, and it was generally known in said community that said Daily during said time sustained such relations to said trust company. It is further alleged that on August —, 1903, the trust company in question entered into a contract with the city for the construction of a building, on premises described, to be used as a city building; that, by the terms of said contract the city became bound to pay to said trust company certain stipulated sums of money semiannually in consideration of the acts performed by said trust company in pursuance of said contract; that this contract has continued in full force and effect from the date of its executon to this time; that the contract was duly executed by said city and by said trust company by said O. Rush Daily, vice-president; that said Daily has acted as such vice-president continuously from the date of execution to this time, and during all of said time was a director in said company; that the contract was duly recorded in the records of the clerk's office of said city; that, by reason of Daily's holding said office, he was on said election day, and ever since has been, ineligible to hold the office of councilman of said city; that neither he nor any other person, other than the relator, is making any claims to said office whatever; that Daily has never accepted said office, nor entered into or attempted to enter into the duties thereof; that at said election the relator was legally elected as councilman at large for said city, for the following reasons, to wit: That of all the votes cast at said election for the office of councilman-at-large said Roscoe Brattan received the highest number and said relator received the highest number next to said Daily; that by reason of the foregoing facts the votes cast

for Daily should not be counted against the relator; that the latter was legally elected and should be declared elected to said office.

It is averred that immediately subsequent to said election the election board of said city issued a certificate of election to said Bratton and Daily, which certificates declared the terms of said office to begin on May 4, 1906; that it was generally understood and believed by this relator that the office of councilman-at-large would not begin until the expiration of the terms of office of the members of the common council elected May 3, 1904; that on May 11, 1906, the relator qualified as a member of said council by filing with the clerk of said city his oath of office, and proceeded to enter upon his duties as a member of said council; that the defendant, John H. Hoy, mayor of said city of Lebanon, as presiding officer of said council, has refused, and continues to refuse, to recognize the relator as a member of the council, although he has presented himself at the sessions of said council for the purpose of acting as a member thereof; that no steps have been taken by the common council or any person to oust said Buchanan, or to elect any person as a member instead of said Daily or said Buchanan; that the relator made demand in writing on the mayor to recognize him; that the latter has refused to do so, and has notified him that he refuses to recognize him. Wherefore the plaintiff prays, etc.

The second paragraph of return to the alternative writ, after alleging the holding of the election on November 7, 1905, and stating the names of the four candidates for the offices of two councilman-at-large, avers that Roscoe Bratton received the highest number of votes cast at said election for councilman-at-large, that Daily received the next highest number of votes, and the relator received the third highest; that the board of canvassers duly convened according to law and issued certificates of their election to said Bratton and Daily to fill the office of councilman-at-large

for said city; that, after receiving his certificate of election, O. Rush Daily, on November 8, 1905, duly qualified as such councilman, as required by law, by filing his oath of office, and also his certificate of election, with the clerk of said city of Lebanon. It is further alleged that on the date of such election and also on the first Monday of January, 1906, said O. Rush Daily was and yet is eligible to hold the office of councilman-at-large for the city of Lebanon; that prior to the election the relator was, and ever since has been, and now is, a resident of said city, and that he did not on said first Monday of January, 1906, nor within ten days thereafter, take possession of said office, nor file his oath of office, nor did he do so at any time within four months thereafter; that said relator never at any time received from said board of canvassers, nor from any other source, a certificate of his election to said office; that in truth and in fact said relator was not elected by the electors of said city of Lebanon to the office of councilman-at-large; that from said November 7, 1905, to May 11, 1906, the relator wholly ignored said office of councilman-at-large, and made no pretense or claim whatever of having been elected thereto, notwithstanding he at all times had full knowledge and notice of all the facts alleged and set forth in his petition and in the alternative writ of mandate; that on said May 11 the relator filed a pretended oath of office with the clerk of the city of Lebanon; that Daily was duly elected to said office, and was in fact and in law such councilman-at-large; that by reason of the facts herein alleged said relator is not and never has been entitled to demand or hold the office of councilman-at-large.

The third paragraph of return sets up facts to show that the contract in question between the city of Lebanon and the American Trust Company is void, by reason of its being in violation of the Constitution, which limits the indebtedness of municipal corporations to two per cent of the taxable property.

Counsel for appellant contend that the relator has invoked an inappropriate remedy; that if he has any right or title to the office in question he should have the same adjudicated by proceedings in *quo warranto,* for the reason that under the circumstances of this case mandamus cannot be rightfully employed to settle or determine a claim to an office or to adjudicate the title thereto between adverse claimants. *Griebel* v. *State, ex rel.* (1887), 111 Ind. 369; *Mannix* v. *State, ex rel.* (1888), 115 Ind. 245; *Carmel Nat. Gas, etc., Co.* v. *Small* (1898), 150 Ind. 427.

The relator, however, denies that *quo warranto* under the facts is his proper remedy, and insists that such proceedings were impossible and that mandamus is his only possible remedy. As a basis for his contention he states (1) that Daily was ineligible; (2) that he, the relator, was eligible; (3) that he was duly elected; (4) that he qualified in time; (5) that no person other than he is making any claim to the office; (6) that Daily refused to accept said office and makes no claim or contention of any kind adversely to him, the relator. It is conceded that Daily at the election in question received, of the whole number of legal votes cast for councilman-at-large, a higher number than that received by the relator, but the latter predicates his right to the office on the ineligibility of Daily under the provisions of §46 of the act of 1905, pertaining to towns and cities (Acts 1905, p. 219, §3470 Burns 1905), which, among other things, provides: "That no officer, employe, agent or servant of any corporation, firm, company or person holding or operating under a franchise granted by any city, or having any contract with such city, shall be eligible to any office in such city."

The argument or contention advanced is that Daily, at the time of the city election on November 7, 1905, was rendered ineligible under the provisions of the statute to hold the office of councilman by reason of the fact that he was

an officer of the American Trust Company, a private corpo-
ration whch at the time had a contract with the city of
Lebanon, as shown under the averments of the petition, of
which fact it is said the voters of the city had notice at the
time they cast their votes for Daily.    Therefore the in-
sistence is that the relator, being eligible to the office and
having received the next highest number of votes cast, must
be deemed and held to be elected within the rule asserted
in such cases as *Gulick* v. *New* (1860), 14 Ind. 93;
*Howard* v. *Shoemaker* (1871), 35 Ind. 111; *State, ex rel.,*
v. *Gallagher* (1882), 81 Ind. 558; *State, ex rel.,* v. *John-
son* (1885), 100 Ind. 489.

By section one of an act approved March 4, 1905 (Acts
1905, p. 189, §6270 Burns 1905), it is, among other things,
provided "that in each city in the State the city board of
election commissioners shall constitute a city board of can-
vassers, who shall canvass and estimate the certificates, poll
lists and tally papers returned by each inspector of election
at all city elections, for which purpose the board shall
assemble in the council chamber of said city at 6 o'clock
p. m. on the day of said election."

Section four of this act provides that such city board
of canvassers, "when organized shall carefully compare
and examine the papers entrusted to it, and aggregate and
tabulate from them    *   *   *    the vote of the city,
*   *   *    a statement of which shall be drawn up by the
clerk [of the board], which shall contain the names of the
persons voted for, the office, the number of votes given
*   *   *    in each ward and precinct in a city election to
each person;    *   *   *    which statement shall be signed
by each member of such board, and canvass sheets together
with such certificates, poll books and tally papers, shall be
delivered to the clerk and by him filed in his office."

Section five of said act provides that "such city board
shall declare the persons having the highest number of

votes given for any office to be filled by the voters at a city election, duly elected to such office, and certify the same in the statement above required."

Section forty-three of the act of 1905, pertaining to towns and cities (Acts 1905, p. 219, §3467 Burns 1905), provides that "all city elections shall be held, and returns thereof made, certificates issued and contests had, in conformity with the general election laws of this State: Provided that the board of canvassers in such election shall assemble at the council chamber of the city to determine the vote and announce the result on the day following the election, at 10 o'clock in the forenoon of such day."

It is shown by the facts in both the petition and the return to the alternative writ that the board, as authorized by the provisions of the statute above mentioned,

1.  canvassed the votes of the city election held in the city of Lebanon on November 7, 1905, and declared that Roscoe Bratton and O. Rush Daily were each duly elected to the office of councilman-at-large for said city, and issued to each of these persons a certificate of his election. On November 8, the day following said election and after he had received the certificate of election, Daily is shown to have qualified by taking the official oath, which, together with his certificate, it is alleged he filed with the clerk of the city. It does not appear that the relator was declared to be elected by the board of canvassers, nor has he received any certificate of election. Under the circumstances Daily, having been declared duly elected and a certificate of election having been issued to him by the legally constituted board of canvassers and having qualified, as shown, is, under these specific facts, shown to have accepted the office, and must at least be deemed to be a claimant thereto adverse to the relator, notwithstanding the general averments of the petition that he never accepted said office, nor made any claim thereto. The rule is well

settled that specific averments or statements of facts in a pleading will control general statements or averments therein. *Frain* v. *Burgett* (1898), 152 Ind. 55, 62, and cases cited.

Daily is not a party to this action, and, as he was by the board of canvassers declared to be duly elected and received the certificate of election, such legally certified state-

2. ment of his election by said board of canvassers affords or constitutes at least *prima facie* evidence of his election to the office in question until such certificate is set aside or annulled in some legal proceeding for contesting the election, or in an action to oust him as a usurper of said office. But the certificate, as between Daily and the State, in this case, is not only *prima facie* evidence of his election or title to the office, but is conclusive, and cannot be inquired into or assailed in this collateral action. *Parmater* v. *State, ex rel.* (1885), 102 Ind. 90, and authorities cited; *People* v. *Cook* (1853), 8 N. Y. 67, 82, 59 Am. Dec. 451; *Hadley* v. *Mayor, etc.* (1865), 33 N. Y. 603, 88 Am. Dec. 412; McCrary, Elections (4th ed.), §§306, 316.

In *People* v. *Cook, supra,* the rule is stated as follows: "The certificate [of the board of canvassers] may indeed be conclusive in a controversy arising collaterally, or between the party holding it and a stranger." The same rule is affirmed in *Hadley* v. *Mayor, etc., supra.* In McCrary, Elections (4th ed.), §316, the author says: "The true rule is, that the certificate of the board of canvassers declaring the result of the election is, in a controversy arising between the party holding it and a stranger, conclusive; but in a proper action, properly entitled, to impeach it and try the title to the office, it is only *prima facie* evidence of the right."

The same author states further: "When it becomes necessary to go beyond the returns and consider questions

touching the legality of the election, or of fraud, illegal voting or the like, then mandamus is not the proper action, and it is necessary to resort to *quo warranto,* or to such statutory proceeding as may be provided in such cases." McCrary, Elections (4th ed.), §398.

In *Mannix* v. *State, ex rel., supra,* which was an action to obtain possession of a public office, this court said: "It is true that such a writ cannot be rightfully invoked to settle a doubtful claim to an office, or to have the title to an office adjudicated upon, as between adverse claimants. In such a case an information in the nature of a *quo warranto* affords the proper remedy. But where the relator holds a *prima facie* and uncontested title to the office, or his title has been adjudicated upon and finally established by a competent tribunal, a writ of mandate may be issued to put him in possession of the office, as well as of the books, papers and other property pertaining to it." It is so manifest under the facts in this case, and the law applicable thereto, that the relator in instituting this proceeding has mistaken his remedy, if any he has, and therefore cannot maintain this action, that further comments upon this phase of the case are unnecessary.

Again, it may be said, we think, that he, under the facts, has no basis whatever upon which to predicate any claim or title to the office in question. It will be noted that he bases his title thereto upon the ground that Daily, who received a higher number of votes cast at the election for councilman than he, was, under the provisions of section forty-six of the acts of 1905, pertaining to towns and cities (Acts 1905, p. 219, §3470 Burns 1905), ineligible to the office, of which fact the electors of the city of Lebanon had notice at the time of the election. Therefore, under the rule asserted in *Gulick* v. *New, supra,* he argues that the votes given to Daily must be treated as never cast, and as he received the next highest number of votes, and was

eligible to the office, must be deemed and held to have been elected thereto. The words of this statute are: *"No officer, employe, agent or servant of any corporation * * * having any contract with such city, shall be eligible to any office in such city."* (Our italics.) Article 7, §16, of our Constitution provides: "No person elected to any judicial office shall, during the term for which he shall have been elected, be eligible to any office of trust or profit under the State, other than a judicial office." Article 2, §10, declares: "No person who may hereafter be a collector or holder of public moneys shall be eligible to any office of trust or profit until he shall have accounted for," etc.

In *Smith* v. *Moore* (1883), 90 Ind. 294, this court, in interpreting the words "eligible to any office," as contained in article 7, §16, *supra*, held that the ineligibility or disqualification therein intended must exist at the time the term of office begins, and that the right of the claimant thereto was not affected by the fact that at the time of his election he was ineligible under the provisions of said section. This interpretation or holding was affirmed and followed in *Vogel* v. *State, ex rel.* (1886), 107 Ind. 374, *Brown* v. *Goben* (1890), 122 Ind. 113, and *Shuck* v. *State, ex rel.* (1893), 136 Ind. 63, the latter two being cases arising under article 2, §10, *supra*. See, also, *Kirkpatrick* v. *Brownfield* (1895), 97 Ky. 558, 31 S. W. 137, 29 L. R. A. 703, 53 Am. St. 422; *Demaree* v. *Scates* (1893), 50 Kan. 275, 32 Pac. 1123, 34 Am. St. 113, 20 L. R. A. 97.

In the appeal of *Smith* v. *Moore, supra,* the cases of *Waldo* v. *Wallace* (1859), 12 Ind. 569, *Gulick* v. *New* (1860), 14 Ind. 93, and *Howard* v. *Shoemaker* (1871), 35 Ind. 111, were limited to cases in which "the judicial term" within the meaning of said §16 extended beyond the beginning of the term of the office to which the person in question had been elected. The cases of *Gulick* v. *New, supra,* and *Vogel* v. *State, ex rel., supra,* accept and en-

force the English rule. Under the latter rule or doctrine great stress is placed upon the fact that the electors, having had notice of the ineligibility or incompetency of the person for whom they cast their votes, therefore it is "wilful obstinacy and misconduct" on their part to cast their votes for a person laboring under a known incompetency. Southwark, Elections, p. 259; Throop, Public Officers, §160; *Reg.* v. *Coaks* (1855), 3 El. & Bl. 249, 77 Eng. C. L. 248, 28 Eng. Law and Eq. 304.

In *Gulick* v. *New, supra,* this court said: "Whilst it is true that the votes of the majority should rule, the tenable ground appears to be that if the majority should vote for one *wholly incapable of taking the office,* having notice of such incapacity, or should perversely refuse, or negligently fail, to express their choice, those, although a minority, who should legitimately choose one eligible to the position, should be heeded." (Our italics.)

In view of the interpretation given under the decisions of this court, to which we have referred, that the phrase "eligible to any office," etc., as employed in the Constitution, has reference to the beginning of the term and not to the election, a like construction or interpretation should be placed upon the phrase "ineligible to any office in said city" as the same is employed in the act of 1905. On this point see also *Demaree* v. *Scates, supra.* It is not necessary in this appeal that we decide as to the exact date upon which the terms of councilmen-at-large elected at the city election herein commenced. It is sufficient for our purpose in this case to say that such term, under section forty-three of the act of 1905, *supra,* commenced either on the first Monday in January, 1906, or at some date subsequent thereto. The precise day we need not and do not determine. It is, however, true that if Daily continued to be an officer in the trust company in question on the day upon which his official term began, he would, under the facts, in view of the statute, be ineligible or disqualified, and could not

legally be inducted into or hold the office, and, as there was
no predecessor filling it, a vacancy therein would have
necessarily occurred, to be filled as provided by law. But
certainly it was within his power, and was his unquestioned
right, at any time between the day of his election in No-
vember and the beginning of his term, to resign or sur-
render his office in the trust company and thereby remove
or free himself of the disability in question before the com-
mencement of the term of the office to which he had been
elected. That this would have been the result of his resig-
nation or surrender of the office which he held in the trust
company is fully sustained by the authorities. It is held
by the supreme court of Wisconsin that a candidate for a
public office, who at the time of his election was an alien,
therefore not an elector under the laws of that state, and,
consequently, ineligible to the office to which he was elected,
might lawfully hold and exercise the duties thereof if he
removed his disability by naturalization before the begin-
ning of his term of office. *State, ex rel.,* v. *Smith* (1861),
14 Wis. 613; *State, ex rel.,* v. *Murray* (1871), 28 Wis. 96,
9 Am. Rep. 489. See, also, *Privett* v. *Bickford* (1881),
26 Kan. 52, 40 Am. Rep. 301.

In the latter case the court said: "There is a marked
distinction between a person who is ineligible or incapable
of being elected, and one who may hold the office. If a
person may hold the office, he may be elected while he is
under the disqualification; and if he becomes qualified
after the election and before the holding, it is sufficient."
Further upon the proposition that Daily might have sur-
rendered or resigned his office in the trust company prior
to the beginning of his term as councilman and thereby
have perfected his title to the latter office, see *DeTurk* v.
*Commonwealth* (1889), 129 Pa. St. 151, 18 Atl. 757, 5
L. R. A. 853, 15 Am. St. 705.

In *King* v. *Parry* (1811), 14 East 548, the court held
that the defendant, who was elected to the office of common

councilman of a certain town, was disqualified under the corporation act because he had not within one year preceding his election taken the sacrament of the Lord's Supper according to the rites of the Church of England. It was further held in that case that after his election he might be freed of his disability and qualify himself for the office to which he had been elected, and thereby protect his title to the same, by taking the sacrament within the time allowed by the indemnity act, which, among other things, granted immunity for the omission to take the Lord's Supper within the time prescribed.

The office held in the trust company by Daily on the date of his election was not a public one, but was an office in a mere private corporation, the duties of which

5. had no connection with or relation to the affairs of the city of Lebanon. The electors of that city were not at the time of the election bound to take notice that he was the incumbent thereof. Under the facts, as we must assume, he had been nominated and his name placed on the official ballot as a candidate for councilman-at-large in accordance with our present election law and with his consent. As the office, however, which he held in the trust company was not a public one, it would, to say the least, be essential for the relator herein, in asserting, as he does in this case, title to the office of councilman, to show that the electors at the time they cast their votes for

6. Daily had actual notice or knowledge of the facts that he held the office in question in the trust company and that the latter company had a contract with the city of Lebanon. Conceding then that they, at the time they gave their votes in favor of Daily, had knowledge of these facts, they must also be presumed to have known the beginning of his term, as fixed or provided by the statute.

As a general rule, under the law, it is the duty of

7. every citizen who is elected to a public office to accept the trust, if eligible, and discharge the duties

thereof. 15 Cyc. Law and Proc., 392; *People, ex rel.,* v. *Williams* (1893), 145 Ill. 573, 33 N. E. 849, 24 L. R. A. 492, 36 Am. St. 514, and authorities there cited.

Under the circumstances the voters had the right to believe that Daily, by offering himself for the office in question and by accepting the place as a candidate therefor on the official ballot, intended, if elected, to carry into effect the will of the majority of the voters by accepting the office, and that he would resign or surrender the office in the trust company before the commencement of the term of his office as councilman, and thereby remove or free himself of his disability or diqualification in order that he might take the office and enter upon the discharge of the duties thereof. Under such circumstances it cannot in reason be asserted that the electors, in casting their votes for him, were guilty of "wilful obstinacy and misconduct," which, as previously shown, constitute the basis of the rule for which the relator contends, for they, as disclosed, had reasons or grounds for believing that he would exercise the power and right which he possessed by removing the disability in question before the beginning of his term, and thereby become competent to take and hold the office. Consequently there is no room for holding in this case that the votes given to Daily should be rejected and treated as nullities. The relator, therefore, certainly has no basis upon which to predicate a right or title to the office in question.

Judgment reversed and cause remanded, with instructons to the lower court to sustain the demurrer to the petition and alternative writ.