HEIDBREDER, INC., Appellant–
Petitioner,

v.

BOARD OF ZONING APPEALS OF
the CITY OF CROWN POINT,
Indiana, Appellee–Respondent.

No. 45A03–0603–CV–136.

Court of Appeals of Indiana.

Dec. 12, 2006.

Bruce A. Lambka, Crown Point, IN, Attorney for Appellant.

Patrick A. Schuster, Crown Point, IN, Attorney for Appellee.

## OPINION

KIRSCH, Chief Judge.

Heidbreder, Inc. ("Heidbreder") appeals the trial court's order denying its petition for writ of certiorari. It raises several issues, which we restate as:

I.   Whether the trial court erred by holding that IC 36–7–4–918.6 does not apply to municipalities;

II.  Whether the trial court erred when it failed to find that Heidbreder's special use had been granted; and

III. Whether the trial court erred when it found that the Mayor of Crown Point was empowered to veto a resolution granting a special use.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In March 2005, Heidbreder filed a petition with the Board of Zoning Appeals of Crown Point ("BZA") requesting a special use to locate a concrete redi-mix plant on real estate that Heidbreder owned in Crown Point, as required by the Crown Point zoning ordinance. On March 28, 2005, the BZA held a public hearing and voted to recommend to the Crown Point City Council ("City Council") that the special use be granted. On April 4, 2005, the City Council voted to grant the special use. The Mayor of Crown Point, however, vetoed the resolution granting the special use on April 12, 2005. The City Council held a special meeting on April 14, 2005, which was continued on April 15. At that meeting, the City Council voted to override the Mayor's veto, but the vote fell short of the required two-thirds majority.

During the period from April 15, 2005 to June 26, 2005, the City Council did not take any action regarding Heidbreder's petition for special use. On June 27, 2005, Heidbreder applied to the Crown Point Planning and Building Department for a building permit to begin construction of the concrete redi-mix plant. That application was denied on the ground that a special use was required, but was never obtained. On July 6, 2005, Heidbreder filed its appeal of the denial of the building permit with the BZA. After hearing the appeal, the BZA voted to deny Heidbreder's appeal. On August 24, 2005, Heidbreder filed a writ of certiorari with the trial court. A hearing was held on this matter, and the trial court entered an order denying the writ on February 24, 2006. Heidbreder now appeals.

## DISCUSSION AND DECISION

### I. The Applicability of IC 36–7–4–918.6

■ Heidbreder first argues that the trial court erred when it held that IC 36–7–4–918.6 does not apply to municipalities and that it only applies to counties. When interpreting a statute, the first step is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind.2005). When a statute is clear and unambiguous, we need not apply any rules of statutory construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* When a statute is susceptible to more than one reasonable interpretation, it is ambiguous and must be construed to determine legislative intent. *Payday Today, Inc. v. McCullough*, 841 N.E.2d 638, 643 (Ind.Ct. App.2006). To determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *City of N. Vernon*, 829 N.E.2d at 4. We also examine the statute as a whole. *Id.* at 4–5. We do not presume that the legislature intended language in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.* at 5. It is a basic rule of statutory construction that statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Reeder Assocs. II v. Chicago Belle, Ltd.*, 807 N.E.2d 752, 755 (Ind.Ct.App.2004), *trans. denied.*

IC 36–7–4–918.6 states, in pertinent part:

(a) This section applies to a county having a population of:

(1) more than four hundred thousand (400,000) but less than seven hundred thousand (700,000); or

(2) more than two hundred thousand (200,000) but less than three hundred thousand (300,000).

Heidbreder contends that the General Assembly intended that the statute apply to both the counties described and the municipalities located within. It relies on *City of Hobart Common Council v. Behavioral Institute of Indiana, LLC,* 785 N.E.2d 238 (Ind.Ct.App.2003), which dealt with a land use variance in the city of Hobart and applied IC 36–7–4–918.6 to the municipality's land use variance. Neither party in that case challenged the statute's application to municipalities.

Under subsection (a) of IC 36–7–4–918.6, the statute is applicable to counties with certain population parameters. These established population parameters are such that they only include Lake County and St. Joseph County. Crown Point is a municipality located within Lake County. In the statute, the language "the board of zoning appeals" and "the legislative body" is used without specifying as to county or municipality. The trial court determined that the statute only applied to counties and not to the municipalities located within those counties because it does not include language specifically referring to municipalities. Although the plain language of the statute does not specifically state that it applies to the municipalities within the counties subject to its provisions, we conclude that IC 36–7–4–918.6 does apply to such municipalities within these counties.

IC 36–7–4–918.6 is a part of the general zoning statute and part of IC 36–7–4–901 to –924, which governs boards of zoning appeals. In IC 36–7–4–901, which provides for the establishment of a board of zoning appeals and clearly applies to municipalities as well as counties, the General Assembly did not specify whether the statute applied to municipalities, counties, or both. The statute simply states:

As a part of the zoning ordinance, the legislative body shall establish a board of zoning appeals.

IC 36–7–4–901(a).

Apparently, the General Assembly believed that the words "legislative body" were sufficiently clear and that the words showed its intent that the statute applied to both municipalities and counties. Because the same words are used in IC 36–7–4–918.6, we conclude that the General Assembly intended that this statute also apply to both the designated counties and the municipalities located therein. Additionally, the procedure that the BZA followed here, which was making a recommendation to the City Council that it approve Heidbreder's petition for special use, was consistent with IC 36–7–4–918.6 being applicable to municipalities. We therefore conclude that IC 36–7–4–918.6 does apply to both the counties that fit within the listed parameters and the municipalities located in such counties. The trial court erred when it found that the statute did not apply to Crown Point, a municipality located within Lake County.

**II. Failure to Find that Special Use Had Been Granted**

■ Heidbreder also argues that because IC 36–7–4–918.6 applies to municipalities within Lake County, the trial court erred in not finding that his petition for a special use had been granted by the operation of law under the statute. It contends that the BZA and the City Council followed the procedure set out in IC 36–7–4–918.6, and therefore, his petition for a special use was granted under the statute. The statute states, in pertinent part:

(b) Notwithstanding sections 918.2, 918.4, and 918.5 of this chapter, a

zoning or subdivision control ordinance shall require that the board of zoning appeals submit any of the following petitions to the legislative body for approval or disapproval:

(1) Special exceptions.

(2) Special uses.

(3) Use variances.

(c) The board of zoning appeals shall file a petition under this section with the clerk of the legislative body with:

(1) a favorable recommendation;

(2) an unfavorable recommendation; or

(3) no recommendation.

. . . .

(e) A petition is granted or denied when the legislative body votes on the petition as follows:

(1) In a county described in subsections (a)(1), the legislative body shall vote on the petition within ninety (90) days after the board of zoning appeals makes its recommendation. If the legislative body does not vote to deny the petition within ninety (90) days, the petition is considered approved.

IC 36–7–4–918.6. Because we have concluded that IC 36–7–4–918.6 does apply to Crown Point as a municipality of Lake County, we apply the provisions of the statute to the present situation.

Here, Heidbreder filed a petition with the BZA requesting a special use to locate a concrete redi-mix plant on land that it owned in Crown Point. On March 28, 2005, the BZA voted to recommend that the City Council grant the special use. On April 4, 2005, the City Council voted to grant the special use. Under the plain language of the statute, a petition is granted when the legislative body, the City Council, votes within ninety days after the BZA has made its recommendation. The City Council voted to grant Heidbreder's petition within ninety days of the BZA's recommendation. This was sufficient to satisfy IC 36–7–4–918.6, and Heidbreder's petition requesting a special use was granted on April 4, 2005. The trial court erred when it failed to find that Heidbreder's petition had been granted.

### III. Mayor's Power to Veto

■ Heidbreder also contends that the trial court erred when it found that the Mayor of Crown Point was empowered to veto the resolution granting the special use, which had been approved by the City Council. Heidbreder claims that IC 36–7–4–918.6 contemplates only action by the legislative body, and that the petition was granted when the City Council voted to approve it. We agree.

According to IC 36–7–4–918.6(e), a petition requesting a special use is either granted or denied when the legislative body votes within ninety days after the BZA makes its recommendation, and if the legislative body does not vote to deny the petition within ninety days, the petition will be considered approved. The statute does not contemplate that any action by a city executive is required for the grant of a petition requesting a special use. Once a vote is taken by the legislative body, no further action is required, and a petition is either granted or denied. Here, Heidbreder's petition for a special use was granted when the City Council voted on April 4, 2005 to approve it, and any action taken after that date did not affect this grant. The trial court erred when it found that the Mayor of Crown Point was empowered to veto the City Council's resolution granting Heidbreder's petition for special use.

Reversed.

SHARPNACK, J., and MATHIAS, J., concur.