Clarke C. CAMPBELL, Appellant–
Defendant,

v.

BOARD OF SCHOOL COMMISSION-
ERS OF the CITY OF INDIANAP-
OLIS, Appellee–Plaintiff,

Marion County Election Board, Indiana
Election Commission, Michael R. Co-
hen, Elizabeth M. Gore, and Leroy
Robinson, Appellees–Defendants.

No. 49A02–0808–CV–681.

Court of Appeals of Indiana.

July 10, 2009.

Clarke C. Campbell, Indianapolis, IN, Attorney for Appellant.

Jon Laramore, Hudnall A. Pfeiffer, Allison Fetter–Harrott, Baker & Daniels LLP, Indianapolis, IN, for Board of School Commissioners of City of Indianapolis.

William R. Groth, Fillenwarth Dennerline Groth & Towe, LLP, Indianapolis, IN, for Michael R. Cohen and Elizabeth M. Gore.

## OPINION

MATHIAS, Judge.

The Board of School Commissioners of the City of Indianapolis ("the IPS Board") filed in Marion Superior Court a complaint for declaratory judgment against the Indiana State Board of Education, the Indiana Election Commission, Clarke Campbell, Michael Cohen, Elizabeth Gore, and Leroy Robinson. In the complaint, the IPS Board sought an interpretation of Indiana Code section 20–25–3–4 and its effect on the outcome of the May 2008 school board election. The trial court determined that the individuals who received the highest number of votes for the at-large seats should be seated by the IPS Board. Campbell appeals and argues that it violates Indiana law for three members of the IPS Board to reside in the same Board district. Concluding that the individuals who received the most votes for the at-large seats were properly seated by the IPS Board, we affirm.[1]

### Facts and Procedural History

This appeal arises from a declaratory judgment action filed by the IPS Board concerning issues that arose as a result of the school board election held in May 2008. The trial court's meticulous findings of fact provide as follows:

6. Clarke C. Campbell, (hereinafter "Campbell") who resides at 1846 Cross Drive Woodruff Place, Indianapolis, Indiana 46201, is currently an at-large member of the IPS Board. Campbell's term with the IPS Board is scheduled to end on June 30, 2008.

7. Elizabeth M. Gore (hereinafter "Gore") resides at 2510 Sangster Avenue, Indianapolis, IN 46218. In May 2008, she ran for election to the at-large seat on the IPS Board currently held by Campbell. Gore received the highest number of votes in her race, and the Marion County Election Board certified Gore as the winner of the at-large seat for which she ran.

1. Appellees Cohen and Gore filed a Motion to Submit Information Relevant to Mootness, which our court granted on June 23, 2009. *See Hoosier Outdoor Advertising Corp. v. RBL Management, Inc.*, 844 N.E.2d 157, 161 (Ind. Ct.App.2006), *trans. denied* (stating that our court may consider evidence extraneous to the record where such evidence is relevant to the mootness of an appeal.)) Cohen's and Gore's oaths of office and IPS Board minutes establishing Cohen's and Gore's performance of Board duties were submitted with the motion.

8. Leroy Robinson, (hereinafter "Robinson") who resides at 4314 Dabney Drive, Indianapolis, Indiana 46254, is currently an at-large member of the IPS Board. Robinson was elected by the IPS Board to fill a vacancy in January 2008 pursuant to I.C. § 20–25–3–4(h). Robinson's term on the IPS Board is scheduled to end on June 30, 2008.

9. Michael R. Cohen (hereinafter "Cohen") resides at 5119 North Capitol Avenue, Indianapolis, IN 46208. In May 2008, he ran for election to the at-large seat on the IPS Board currently held by Robinson. Cohen received the highest number of votes in his race, and the Marion County Election Board certified Cohen as the winner of the at-large seat for which he ran.

10. Under Indiana Code § 20–25–3–4, the Indianapolis Public schools Board of School Commissioners consists of seven members. Five members are elected from districts where those members reside. The remaining two members are elected at large.

11. Normally, the elections for at-large seats are not conducted concurrently, but rather in alternate, even-numbered years.

12. Indiana Code § 20–25–3–4(e) states: "A candidate who runs for … an at-large position wins if the candidate receives the greatest number of votes of all the candidates for the position."

13. In May 2004, Campbell was elected as an at-large member of the IPS Board. Campbell's term with the IPS Board is scheduled to end on June 30, 2008.

14. In the election on May 6, 2008, Campbell's at-large seat was up for election in the normal course because his term was about to expire. On the ballot, this seat was referred to as the "incumbent" seat.

15. Campbell, Gore, Ramon Batts, and Karen Drain Mahamadou each ran in the election for this at-large "incumbent" seat. Gore received the most votes of those running for the incumbent seat in the regular election, and she has been certified by the Marion County Election Board as the winner of that election. Gore received 22,942 votes. Campbell received 15,512 votes.

16. Olgen Williams was elected as an at-large member of the IPS Board in May 2006. Williams's term is scheduled to end on June 30, 2010.

17. In December 2007, Williams resigned from his position as an at-large member of the IPS Board. Williams's resignation left a vacancy on the IPS Board.

18. Indiana Code § 20–25–3–4(h) states:

[A] vacancy in the board shall be filled temporarily by the board as soon as practicable after the vacancy occurs. The member chosen by the board to fill a vacancy holds office until the member's successor is elected and qualified. The successor shall be elected at the next regular school board election occurring after the date on which the vacancy occurs. The successor fills the vacancy for the remainder of the term.

19. Under this provision, at a public meeting on January 28, 2008, the IPS Board elected Robinson to fill Williams's vacant seat until the next regular school board election.

20. On May 6, 2008, an election was held in conjunction with a regular school board election to fill Williams's at-large seat on the IPS Board that is currently occupied by Robinson. During that election, this seat was referred to on the ballot as the "open" seat. The term for this seat is scheduled to end on June 30, 2010.

21. Robinson and Cohen ran in the election for Williams's "open" seat. Cohen received more votes than Robinson, and Cohen has been certified by the Marion County Election Board as the winner of that election. Cohen received 28,348 votes. Robinson received 24,442 votes.

22. At the time that Gore and Cohen each ran in their separate elections, each was qualified to run under Title 3 and Title 20 of the Indiana Code.

23. Indiana Code § 20–25–3–4(b) states that "[n]ot more than two (2) of the members who serve on the board may reside in the same school board district."

24. IPS Board member Kelley Bentley lives in, and is the elected representative of, IPS District 3. Bentley's term ends on June 30, 2010.

25. Both of the newly elected at-large members, Cohen and Gore, also live in IPS District 3.

26. Indiana Code § 20–25–3–4(f) states that the State Board of Education shall establish balloting procedures for the election of members of the IPS Board under Title 3 of the Indiana Code as well as "other procedures required to implement [Indiana Code § 20–25–3–4]."

27. The State Board of Education has established no procedures that address or apply to the relevant circumstances described above under Indiana Code § 20–25–3–4 or otherwise.

* * *

31. On June 5, 2008, the IPS Board filed an emergency petition with the State Board under Indiana Code § 20–25–3–4(f), seeking guidance on how the IPS Board should be composed on and after July 1, 2008 and asking the State Board to convene a special emergency meeting to address the foregoing matter (hereinafter "Emergency Petition").

32. On June 10, 2008, Kevin McDowell, State Board Hearing Examiner on the IPS Board's Emergency Petition, issued an Order of Dismissal dismissing IPS's Emergency Petition for lack of jurisdiction.

* * *

39. The IPS Board is in critical need of a decision from the court in the form of declaratory or other relief as to how this matter should be resolved and/or who should serve as the at-large Board members beginning on July 1, 2008.

40. The IPS Board has sought declaration from this Court as to how to comply with the law in seating its members on July 1, 2008, in light of the following provisions:

a. Indiana Code § 20–25–3–4(e), stating that "[a] candidate who runs for . . . an at-large position wins if the candidate receives the greatest number of votes of all the candidates for the position," and

b. Indiana Code § 20–25–3–4(b), which states that "[n]ot more than two (2) of the members who serve on the board may reside in the same board district."

Appellee's App. pp. 2–7.

A hearing was held in this matter on June 19, 2008. On June 30, 2008, the trial court issued its findings of fact and conclusions of law. After applying rules of statutory construction and determining that the language regarding the board members' residency in the school board districts is discretionary, the court concluded that Gore and Cohen, the individuals who received the highest number of votes for each at-large seat, "shall be seated when their respective terms begin on July 1, 2008." *Id.* at 14. Campbell now appeals.

## Discussion and Decision

■ Preliminarily, we note that we granted the Appellees' Motion to Submit Information Relevant to Mootness allowing Appellees Gore and Cohen to submit evidence that they took the oath of office on July 1, 2008, and have been performing their IPS Board duties since that date. Assuming arguendo that said evidence may render this case moot, we choose to proceed under the public interest exception to mootness. *See Golub v. Giles,* 814 N.E.2d 1034, 1036 n. 1 (Ind.Ct.App.2004), *trans. denied* ("While generally, we dismiss cases that are deemed to be moot, a moot case may be decided on its merits when it involves questions of great public interest that are likely to recur.").

Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *In re Guardianship of E.N.,* 877 N.E.2d 795, 798 (Ind.2007) (citing *Porter Dev., LLC v. First Nat'l Bank of Valparaiso,* 866 N.E.2d 775, 778 (Ind.2007)). De novo review allows us to decide an issue without affording any deference to the trial court's decision. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000).

The goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly. *Sales v. State,* 723 N.E.2d 416, 420 (Ind.2000). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Heidbreder, Inc. v. Bd. of Zoning Appeals of City of Crown Point,* 858 N.E.2d 199, 200 (Ind.Ct. App.2006), *trans. denied.* To determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *City of N. Vernon v. Jennings NW. Reg'l Utils.,* 829 N.E.2d 1, 4 (Ind.2005); *see also Lake Cent. Sch. Corp. v. Hawk Dev. Corp.,* 793 N.E.2d 1080, 1085 (Ind.Ct.App.2003), *trans. denied* ("When two statutes or two sets of statutes are apparently inconsistent in some respects, and yet can be rationalized to give effect to both, then it is our duty to do so."). We also examine the statute as a whole. *City of N. Vernon,* 829 N.E.2d at 4–5.

The first and often the last step in interpreting a statute is to examine the language of the statute. *Golden Rule Ins. Co. v. McCarty,* 755 N.E.2d 1104, 1107 (Ind.Ct.App.2001), *trans. denied.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.*

Our resolution of this appeal hinges on our interpretation of Indiana Code sections 20–25–3–3 and –4, which provide in pertinent part:

A member of the board must (1) be a resident voter of the school city and (2) have been a resident of the school city for at least one (1) year immediately preceding the member's election.

\* \* \*

(a) The board consists of seven (7) members. A member:

(1) must be elected on a nonpartisan basis in primary elections held in the county as specified in this section; and

(2) serves a four (4) year term.

(b) Five (5) members shall be elected from the school board districts in which the members reside and two (2) members must be elected at large. *Not more than two (2) of the members who*

*serve on the board may reside in the same school board district.*

(c) If a candidate runs for one (1) of the district positions on the board, only eligible voters residing in the candidate's district may vote for that candidate. If a person is a candidate for one (1) of the at-large positions, eligible voters from all the districts may vote for that candidate.

(d) If a candidate files to run for a position on the board, the candidate must specify whether the candidate is running for a district or an at-large position.

(e) *A candidate who runs for a district or an at-large position wins if the candidate receives the greatest number of votes of all the candidates for the position.*

\* \* \*

(h) In accordance with subsection (k), a vacancy in the board shall be filled temporarily by the board as soon as practicable after the vacancy occurs. The member chosen by the board to fill a vacancy holds office until the member's successor is elected and qualified. The successor shall be elected at the next regular school board election occurring after the date on which the vacancy occurs. The successor fills the vacancy for the remainder of the term.

(i) An individual elected to serve on the board begins the individual's term on July 1 of the year of the individual's election.

Ind.Code § 20–25–3–3, –4 (2008) (emphasis added).

Under these statutes, there is no dispute that Gore and Cohen were qualified to run for the "incumbent" and "open" at-large seats respectively at the time each formally and legally established her or his candidacy.[2] The issue presented in this appeal arose because Gore and Cohen received the most votes for the two at-large seats, but they also both reside in the same district as the IPS Board member who represents District 3. Thus, we are faced with a situation in which it is impossible to adhere to both subsections (b) and (e) of section 20–25–3–4.

Campbell argues that it is a violation of Indiana law for three members of the IPS Board to reside in the same board district. The trial court rejected Campbell's argument and noted that the term "may," which is used in subsection (b), "ordinarily implies a permissive condition and a grant of discretion." Appellant's App. p. 17 (cit-

---

2. In his dissenting opinion, Judge Bailey cites *City of Evansville v. Brown*, 171 Ind.App. 284, 356 N.E.2d 691 (1976). We believe that the highly unusual facts of this case are distinguishable from the circumstances presented in *City of Evansville*. In that case, the incumbent councilman for the 4th Ward was defeated by challenger Paul Brown. However, in December and before Brown took the oath of office, his employer transferred him to a position in another state. The council therefore deemed the office to be vacant and held a special meeting to fill the vacancy over the incumbent's objection. The trial court concluded, and our court agreed, that pursuant to Article Fifteen, Section Three of the Indiana Constitution, because Brown failed to take his oath and qualify for his term of office, the previous incumbent held over and there was no vacancy in the office. *Id.* at 285, 356 N.E.2d at 692.

Therefore, like a candidate who later commits a disqualifying criminal offense, it was Brown's own act of moving from the State of Indiana that caused his disqualification to serve. The rare circumstance in the case before us, i.e. that the two at-large seats were up for election as a result of a prior IPS Board member's resignation, caused three individuals to be elected to the IPS Board from the same Board district. For this reason, we simply cannot conclude, as would Judge Bailey, that Gore's election to the Board renders Cohen unqualified to serve.

ing *Romine v. Gagle,* 782 N.E.2d 369, 380 (Ind.Ct.App.2003), *trans. denied* ). *See also Colen v. Ohio County,* 890 N.E.2d 1, 5 (Ind.Ct.App.2008). Consequently, the trial court concluded that the district restriction in subsection (b) "is discretionary and not mandatory." Appellant's App. p. 20. Appellees Gore and Cohen argue that reading subsection (b) as discretionary "gives the statutory scheme the flexibility to address" the circumstance presented in this case. Br. of Appellees Gore and Cohen at 8.

█ Subsection (b) states in pertinent part: "Not more than two (2) of the members who serve on the board may reside in the same school board district." We cannot agree with the trial court that the use of the term "may" renders subsection (b) discretionary. To conclude otherwise would be contrary to the unambiguous language of the subsection. Reading section 20–25–3–4 as a whole leads us to the conclusion that the General Assembly intended that of the seven IPS Board members, no more than two members residing in the same IPS district may serve on the IPS Board at the same time.

█ In this case, we are presented with a situation that the statute simply does not address. The General Assembly addressed normal vacancies on the IPS Board and how those vacancies would be filled in section 20–25–3–4(h), but provided no guidance for the rare, but potentially recurring circumstance in this case where a mid-term resignation by an at-large Board member caused both at-large seats to be vacant in the same election cycle.

We note that in its findings, the trial court observed, "[w]here different parts of a statute are in irreconcilable conflict, the later in position will control." Appellant's App. p. 12 (citing *Town of Homecroft v. Macbeth,* 238 Ind. 57, 65, 148 N.E.2d 563, 567 (1958)). *See also Waldridge v. Futurex Industries, Inc.,* 714 N.E.2d 783, 785

(Ind.Ct.App.1999) ("When two statutes on the same subject matter must be construed together, the court should attempt to give effect to both. Where the two are repugnant, however, the later statute will control and operate to repeal the earlier to the extent of the conflict.").

Subsections (b) and (e) are not generally inconsistent, but are only irreconcilable under the exceptional circumstances presented in this appeal. We agree with the trial court that subsection (e), i.e. "[a] candidate who runs for a district or an at-large position wins if the candidate receives the greatest number of votes of all the candidates for the position", which is the later in position, should control.

█ Our conclusion is consistent with the governing rule in Indiana that "[i]n the absence of fraud, election statutes generally will be liberally construed to guarantee to the elector an opportunity to freely cast his ballot, to prevent his disenfranchisement, and to uphold the will of the electorate." *Howell v. Blackburn,* 236 Ind. 242, 248–49, 139 N.E.2d 905, 909 (1957); *Brown v. Grzeskowiak,* 230 Ind. 110, 128, 101 N.E.2d 639, 646 (1951). *See also State ex rel. McGonigle v. Madison Circuit Court for the Fiftieth Judicial District,* 244 Ind. 403, 416, 193 N.E.2d 242, 249 (Ind.1963) ("[T]he right of franchise is a political privilege of the highest dignity which can emanate only from the people, either in their sovereign statement of the organic law or through legislative enactment which they have authorized.").

Our supreme court recently reaffirmed Indiana's "longstanding respect for the right of the people to free and equal elections", and our supreme court's reluctance "to remove from office a person duly elected by the voters." *Burke v. Bennett,* 907 N.E.2d 529, 532 (Ind.2009). The court noted that "[p]ast cases have refused to

remove an elected officer on claims of ineligibility unless the electorate had notice or knowledge of the ineligibility or disqualification." *Id.* (citing *Oviatt v. Behme,* 238 Ind. 69, 74–75, 147 N.E.2d 897, 900 (1958); *Hoy v. State ex rel. Buchanan,* 168 Ind. 506, 517–18, 81 N.E. 509, 513–14 (1907)). *See also, Fields v. Nicholson,* 197 Ind. 161, 166, 150 N.E. 53, 55 (1925) ("[I]n the absence of proof that the voters willfully threw away their ballots on a candidate they knew could not lawfully be elected, the mere fact that the one who received the largest vote was ineligible to be elected ... is not enough to give the candidate who received a less number the right to the office."). We believe these principles apply with equal force to the circumstances presented in this appeal.

Furthermore, we cannot agree with Campbell's assertion that geographic diversity should prevail over the will of the electorate. Each of the five school board districts is represented by a member on the IPS Board. Because two at-large members are also elected, the General Assembly has authorized an IPS Board that lacks uniform geographic diversity. Accordingly, we conclude that geographic diversity was not our legislature's overriding concern.

In an unlikely turn of events caused by the mid-term resignation of an at-large Board member, both IPS Board at-large seats were on the ballot in the May 2008. Four qualified individuals ran for the "incumbent seat" ultimately won by Gore and two qualified individuals ran for the "open seat" ultimately won by Cohen. Gore and Cohen were both qualified to serve as IPS Board members pursuant to Indiana Code section 20–25–3–3, and no additional post-election qualification was required in order to take the oath of office and to be seated on the Board.[3] The IPS Board, the candidates for the open and incumbent seats, and the electorate could not have reasonably foreseen that the result of the May 2008 election would conflict with the provisions of Indiana Code 20–25–3–4. Moreover, as noted by Cohen and Gore in their brief, the problem will self-correct in May 2010 when Cohen's at-large seat will be on the ballot. Br. of Appellees Gore and Cohen at 11.

Judge Bailey and Appellant Campbell cite to Article 15, Section 3 of the Indiana Constitution, which provides:

> Whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean, that such officer shall hold his office for such term, and until his successor shall have been *elected and qualified.*

(Emphasis added). Because we conclude that Gore and Cohen were qualified and elected to serve on the IPS Board, we hold that Article 15, Section 3 is not implicated in this appeal. Furthermore, we conclude that the term "qualified" as it is used in the cited constitutional provision refers to actions the elected successor must take post-election to "qualify" for office, such as taking the oath of office and/or filing a bond. *See e.g.* Ind.Code § 5–4–1–20 (2008) (providing that "[a] person elected to the office of prosecuting attorney shall execute an individual surety bond for the faithful performance of the duties of the office" and may not take office until such bond is filed); Ind.Code §§ 5–4–1–5.1, 18 (2008) (listing all city, town, county, or township officers who are required to execute an

---

**3.** As we previously noted, our court granted Appellees Gore's and Cohen's motion to submit additional evidence relevant to mootness and the evidence submitted with that motion established that they took the oath on July 1, 2008.

official bond for the faithful performance of their duties); *see also,* 1977 Ind. Op. Att'y Gen. No. 12 (1977); 1959 Ind. Op. Att'y Gen. No. 65 (1959) (generally addressing whether the elected candidate was "elected and qualified" for public office). Gore and Cohen were qualified throughout the election process and took the oath of office on July 1, 2008.

For all of these reasons, we conclude that the trial court reached the correct result when it declared that Gore and Cohen should be seated by the IPS Board because they received the "most votes" for their respective at-large seats. In view of the overriding goal "to uphold the will of the electorate" it bears repeating that Gore received 22,942 votes to Campbell's 15,512 votes, and Cohen received 28,348 votes to Robinson's 24,442 votes for the respective at-large seats. *See Burke,* 907 N.E.2d at 532 (noting our supreme court's reluctance "to remove from office a person duly elected by the voters.").

Finally, we urge the General Assembly to consider the circumstances presented in this appeal and to formulate a statutory remedy to similar circumstances should they recur in a future election.

Affirmed.

BARNES, J., concurs.

BAILEY, J., dissents with opinion.

BAILEY, Judge, dissenting.

I dissent from my colleagues' opinion that Michael Cohen is qualified to hold an at-large position on the IPS Board, and I disagree with their determination that Indiana Code Section 20–25–3–4 provides no guidance for the circumstances that occurred in this case.

The Majority concludes that the election results cannot satisfy both subsection (b) of the statute, which states that "[n]ot more than two (2) of the members who serve on the board may reside in the same school board district," and subsection (e), which provides that a candidate "wins if the candidate receives the greatest number of votes of all the candidates for the position." Based on its conclusion that disenfranchisement is a greater evil than disproportionate representation and its reasoning that the statutory provision "later in position" controls, slip op. at 10, the Majority concludes that both Elizabeth Gore and Michael Cohen, who received the greatest number of votes cast in their respective at-large elections, should be seated by the IPS Board, despite the fact that this results in three members residing in the same district.

As my colleagues observed, the trial court resolved the perceived conflict by construing the word "may" in subsection (b) as discretionary, not mandatory. I concur with their rejection of that construction. As Judge Mathias writes: "the General Assembly intended that of the seven IPS Board members, no more than two members residing in the same IPS district may serve on the IPS Board at the same time." Slip op. at 9. I part ways with the Majority, however, in its refusal to give effect to this legislative enactment.

The anomaly at issue arose because one at-large school board member resigned before the expiration of his term, so normally staggered elections for at-large positions occurred on the same date. But I do not find it necessary to disregard the legislature's allocation of political power. Instead, I believe the legislature provided a solution in subsection (h) of the statute, which addresses vacancies, the genesis of this dispute. It reads:

> In accordance with subsection (k), a vacancy in the board shall be filled temporarily by the board as soon as practicable after the vacancy occurs. *The*

*member chosen by the board to fill a vacancy holds office until the member's successor is elected and qualified.* The successor shall be elected at the next regular school board election occurring after the date on which the vacancy occurs. The successor fills the vacancy for the remainder of the term.

I.C. 20–25–3–4(h) (emphasis added.)

The above-emphasized language is similar to that found in Article 15, Section 3 of the Indiana Constitution:

Whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean, that such officer shall hold his office for such term, and *until his successor shall have been elected and qualified.*

(Emphasis added.) Our Supreme Court explained the provision as follows:

When the elective term ends and no qualified person has been elected and qualified to take over the duties of the office, the person holding the office at the end of the elective term has a right and duty, commanded by Art. 15, § 3 supra, to hold the office and discharge its duties "until his successor shall have been elected and qualified." This service is not a part of his elective term, but is a constitutional term granted to avoid a vacancy—and to assure an ever-continuing government in any and every emergency.

*Swank v. Tyndall,* 226 Ind. 204, 78 N.E.2d 535, 538 (1948).

In my opinion, the determination of whether a successor is qualified need not be determined only before an election. Rather, in certain circumstances, a successor's qualifications can be examined post-election. *See City of Evansville v. Brown,* 171 Ind.App. 284, 356 N.E.2d 691 (1976)

(litigating status of elected official who did not take oath of office and of incumbent defeated in election). And I do not limit that inquiry to whether a successor has taken an oath or filed a bond. As our Supreme Court stated in an early election contest case: "that the contestee was eligible to hold the office at the time he was elected[ ] will not authorize him to hold it after he became ineligible...." *Jeffries v. Rowe,* 63 Ind. 592, 594 (1878). Furthermore, the oath itself contains an assurance that the "member possesses all the qualifications required by this chapter for membership on the board[.]" Ind.Code § 20–25–3–3(c)(1).

Recently, our Supreme Court reviewed a claimant's qualifications both at the time of his election and also at the time he assumed office. *Burke v. Bennett,* 907 N.E.2d 529 (Ind., 2009). The *Burke* Court acknowledged that the Indiana election contest action permits a post-election challenge to an "ineligible" winning candidate. *Id.,* at 531 (citing I.C. § 3–12–8–1 and –8–2(1)). The Court continued:

an election contest petition must state that the person elected "does not comply with the specific constitutional or statutory requirement set forth in the petition that is applicable to a candidate for the office." [I.C] § 3–12–8–6(a)(3)(A). A trial court, after hearing a petition "alleging that a candidate is ineligible," must declare as elected "the *qualified* candidate who received the highest number of votes and render judgment accordingly." *Id.* § 3–12–8–17(c) (emphasis added).

*Id.* Additionally, the Indiana disqualification statute may be employed either pre-election to challenge one as a candidate or post-election to prevent the election winner from assuming his position. *Id.* at 531 (citing I.C. § 3–8–1–5(c)(6)). Accordingly,

"[t]he point in time at which the statute's disqualifiers are to be assessed depends upon whether the challenger is using the statute to prevent another person from being a candidate or from assuming office." *Id.*

The IPS Board initiated this action by a complaint for declaratory judgment. As with the foregoing statutes, however, the statutory qualifier requiring geographic diversity on the IPS Board, as expressed in Indiana Code Section 20–25–3–4(b), has viability post-election. In my view, although Cohen was personally qualified at the time of the election, when Gore defeated Campbell, Cohen became statutorily disqualified to hold office because he was the third person residing in the district elected to the school board. Further, he remained disqualified at the time he assumed office.[4]

"Offices are neither grants nor contracts nor obligations which can not be changed or impaired. They are subject to the legislative will at all times, except so far as the constitution may protect them from interference." *Jeffries,* 63 Ind. at 594–95. Under other circumstances, I could agree with my colleagues that the election results should stand. *See Cline v. Board of*

*Trustees of County Sch. Corp. of Brown County,* 534 N.E.2d 748 (Ind.1989) (permitting disproportionate representation temporarily during establishment of redistricting plan.) But here, the legislature has spoken: "The member chosen by the board to fill a vacancy holds office until the member's successor is elected and qualified." I.C. § 20–25–3–4(h). In accordance with subsection (h), Robinson, who was serving in the position before the election, should hold the second contested at-large position on the IPS Board until another person is elected *and* qualified. *See Patterson v. Dykes,* 804 N.E.2d 849 (Ind.Ct. App.2004) (concluding that incumbent councilman should hold over until next general election because successful candidate was disqualified from holding the office to which he was elected).[5]

I come to this conclusion based upon principles of statutory construction, first, that we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *See* slip op. at 6–7 (citing cases). I also find guidance in a related statute, Indiana Code Section 20–23–4–29, applicable "to each school corporation." I.C. § 20–23–4–29(a). *See Horn v. Hen-*

4. I do not believe that the issue presented is moot, as the wrong person sits on the board. If it were moot, however, I agree that the public interest exception would apply, as the issue is likely to recur. Accordingly, in future cases where vacancies occur in what is termed an "open" election, I would apply the same analysis.

5. The trial court also reasoned that subsection (e) controls because it is later in textual position than is subsection (b), and the Majority agrees with that reasoning. *See State ex rel. Board of Com'rs of Hendricks County v. Board of Com'rs of Marion County,* 170 Ind. 595, 85 N.E. 513, 515 (1908) (quoting 1 Lewis' Sutherland on Statutory Construction, § 268, p. 514 (2d ed.) for the proposition: "The different sections or provisions of the

same statute or Code should be so constructed as to harmonize and give effect to each; but, if there is an irreconcilable conflict, the later in position prevails."); *but see* 2A Norman J. Singer and J.D. Shambie Singer, Sutherland Statutory Construction, § 46:5, pp. 226–27 (7th ed. 2007) ("If conflict between provisions in the same act is resolvable no other way, the last provision in point of arrangement within the text of the act is given effect. However, if the words in question mean different things the rule of construction does not apply.") (citations omitted). Because I do not find irreconcilable conflict, I need not consider the Majority's "later in position" rationale. Nevertheless, I note that subsection (h) is the latest "in position" of the three subsections under consideration.

*drickson,* 824 N.E.2d 690, 698 (Ind.Ct.App. 2005) (acknowledging principle that we consider related statutes to effectuate legislative intent). That enactment describes the ballot form and employs a striking procedure to avoid disproportionate representation, presumably when two or more board members are elected for the same term of office. The statute directs:

> Candidates having the greatest number of votes are elected. However, if more than the maximum number that may be elected from a residence district are among those having the greatest number of votes, the lowest of those candidates from the residence district in excess of the maximum number shall be eliminated in determining the candidates who are elected.

I.C. § 20–23–4–29(g); *see Cline,* 534 N.E.2d at 752 (discussing predecessor statute). Although the statute may have limited applicability here because there were two "ballots" for two at-large positions with differing terms, the legislation clearly illustrates intent to avoid disproportionate representation and the resulting imbalance of power. The majority opinion gives no effect to this legislative intent.

Moreover, apart from statutory construction, the outcome I advance results in the retention of Robinson, who received the second-highest vote count of the four at-large candidates named in this action. The outcome also comports with equity, as Cohen chose to enter what was designated on the ballot as the "open" two-year term seat held by Robinson rather than the "incumbent" four-year term position. This choice created the possibility that three board members would reside in the same district in contravention of the statute and,

thus, that Cohen would not statutorily be qualified to serve.[6]

For the foregoing reasons, I respectfully dissent.

---

6. Notably, Elizabeth Gore also chose the position for which she ran. However, because a vacancy in the "open" at-large position caused the problem, and because subsection (h) specifically deals with that vacancy, the solution I propose affects that position only.